PEOPLE v CHERNOWAS

Docket No. 51987. Submitted June 3, 1981, at Detroit.—Decided
    November 2, 1981.

James Chernowas, Joseph Chernowas and Richard Hernandez
    were all charged in Detroit Recorder's Court with carrying
    concealed weapons. The charges arose when the automobile
    they were riding in was stopped for minor traffic violations.
    The driver, Hernandez, got out of the car to speak to one of the
    police officers. The officer, believing that he smelled the odor of
    marijuana smoke, asked Hernandez if he had been smoking
    marijuana. Hernandez stated that he had. When asked if there
    was any more marijuana in the car, Hernandez stated that he
    didn't think so. Defendants Chernowas, passengers in the vehi-
    cle, were then asked for identification and, upon failure to
    produce any, were asked to get out of the car. When they did
    so, the officer saw a brown paper bag on the back seat of the
    car. He entered the car, looked in the bag and saw what he
    believed to be marijuana. Upon attempting to get out of the
    car, the officer saw the butt of a gun sticking out from under
    the front seat. Further investigation revealed two loaded pistols
    under the seat. Defendants were then placed under arrest and
    a third loaded pistol was found on James Chernowas. Defen-
    dants moved to suppress the evidence and to quash the infor-
    mation. The motions were granted and the charges dismissed,
    Clarice Jobes, J. The people appeal. *Held:*

    The trial court did not err in suppressing the evidence and
    dismissing the charges. The search was based upon Hernan-
    dez's statements and the odor of burned marijuana. The odor of
    the burned marijuana immediately made the defendants the
    focus of a criminal investigation requiring that they be advised
    of their *Miranda* rights before being subjected to questioning.
    The failure of the police to give *Miranda* warnings to Hernan-
    dez prior to questioning requires that his statements be sup-
    pressed, leaving only the odor of the burned marijuana as the

REFERENCES FOR POINTS IN HEADNOTES
[1] 68 Am Jur 2d, Searches and Seizures §§ 16, 43, 45, 99.
"Fruit of the poisonous tree" doctrine including evidence derived
    from information gained in illegal search. 43 ALR3d 385.

basis for the search. The odor of marijuana smoke by itself is insufficient to constitute probable cause to search a vehicle. Thus, the search was unlawful.

Affirmed.

Searches and Seizures — Motor Vehicles — Marijuana — Miranda Warnings — Evidence.

The search of an automobile was unlawful and the suppression of evidence discovered during the search was proper where the search was prompted by the driver's affirmative reply to a question asking whether he had been smoking marijuana and by the odor of burned marijuana and where the driver had not been advised of his *Miranda* rights even though the odor of the marijuana immediately made the occupants of the vehicle the focus of a criminal investigation; failure to advise the occupants of their *Miranda* rights before questioning required that the statements be suppressed and, since the odor of burning marijuana by itself is insufficient to constitute probable cause to search a vehicle, that the charges arising out of the unlawful search be dismissed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Timothy C. Scallen,* Assistant Prosecuting Attorney, for the people.

*Mitchell G. Howard,* for defendants Chernowas.

Before: Bronson, P.J., and R. M. Maher and F. X. O'Brien,* JJ.

Bronson, P.J. The people appeal from two orders entered on April 10, 1980, in the Detroit Recorder's Court suppressing certain statements and physical evidence and dismissing the charges brought against all defendants. Each defendant had been charged with carrying a concealed weapon, MCL 750.227; MSA 28.424.

The facts are not in dispute. On February 29,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

1980, at approximately 3:40 a.m., Michigan State Police Troopers Gary Bland and Larry Waldron stopped defendants' automobile on west-bound I-94 for excessive noise and a missing brake light. Defendant Hernandez was driving the vehicle and defendants Chernowas were passengers.

As Waldron approached, Hernandez exited from the car. The pair met near the rear of the auto. Trooper Waldron detected a "strong odor" which he believed to be marijuana smoke. Consequently, he asked Hernandez if he had been smoking marijuana. Hernandez answered, "yes". Waldron then asked him if there was any more marijuana in the vehicle. Hernandez replied that he did not think so. Prior to the questioning, Waldron had not advised Hernandez of his *Miranda*[1] rights.

Due to Hernandez's statements, Officer Bland asked the Chernowases for identification. Neither could produce any, so Bland asked them to leave the car. He then looked into the vehicle and saw a brown paper bag lying on the rear seat. He entered the vehicle, looked into the bag, and saw a plastic container containing what he believed to be marijuana. While leaving the vehicle, he observed the butt of a gun protruding from under the front passenger seat. He ultimately discovered a loaded .357 magnum and a .45-caliber automatic under the seat. Consequently, the defendants were arrested.

Another state trooper on patrol, Shelby Slater, stopped to give assistance. Slater searched James Chernowas and found a loaded gun on his person.[2]

---

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

[2] The trial court relied on testimony taken at the preliminary examination. The exclusive reliance of the courts on preliminary examination transcripts when considering questions involving the admissibility of evidence was condemned in *People v Talley,* 410 Mich

The people first allege that under the holding of *Rakas v Illinois,* 439 US 128; 99 S Ct 421; 58 L Ed 2d 387 (1978), defendants did not have standing to challenge the search. We decline to address the merits of this claim because it is raised for the first time on appeal and because the record is not sufficiently developed to resolve the issue of whether the defendants had a "legitimate expectation of privacy" in the searched premises under *Rakas.* We do note, however, that the charge against James Chernowas resulted from evidence actually removed from his person. Even under *Rakas,* a defendant has a legitimate expectation of privacy in his person and clothing.

We further question the applicability of *Rakas* in Michigan. In certain respects, Michigan constitutional law provides greater protection to its citizenry to be free from unreasonable searches and seizures than does federal constitutional law. See, *People v Nabers,* 103 Mich App 354, 375; 303 NW2d 205 (1981), *rev'd in part on other grounds* 411 Mich 1046 (1981). We note that the Michigan Supreme Court has never cited *Rakas* as authority for the proposition that a defendant has no standing to challenge the legality of a search. In *People v Beavers,* 393 Mich 554; 227 NW2d 511 (1975), *cert den* 423 US 878; 96 S Ct 152; 46 L Ed 2d 111 (1975), the Michigan Supreme Court rejected *United States v White,* 401 US 745; 91 S Ct 1122; 28 L Ed 2d 453 (1971), as controlling in Michigan. In *Beavers,* the Court decided as a matter of Michigan constitutional law that a person's rea-

378; 301 NW2d 809 (1981). Here, there was not exclusive reliance on the examination transcripts, extensive argument having been heard at the suppression hearing. The suppression hearing in this case was held prior to the decisional date of *Talley.* Furthermore, unlike *Talley,* the facts were not in dispute and the issue was solely a legal one to be resolved by the court. See, generally, *People v Clement,* 107 Mich App 283, 285, fn 2; 309 NW2d 236 (1981).

sonable expectation of privacy precluded the possibility that communications directed in private to one person could be simultaneously intercepted electronically by a third person. The United States Supreme Court in *White* had reached the opposite conclusion.

*Rakas* equates a "legitimate expectation of privacy" with proprietary rights. The dissent in *Rakas* was unable to see the logic behind the *Rakas* holding that a person who is legitimately on the premises when the search occurred does not have a reasonable expectation of privacy in respect to everybody except the owner of the premises. We believe the dissent's position is well taken. We urge the Michigan Supreme Court to address the applicability of *Rakas* in Michigan at its earliest opportunity.

On the merits of this case, we believe the lower court properly suppressed the evidence in issue. In our opinion, this case is indistinguishable from *People v Hilber,* 69 Mich App 664; 245 NW2d 156 (1976), *aff'd* 403 Mich 312; 269 NW2d 159 (1978). In *Hilber,* the defendant was stopped for speeding. As a state trooper spoke with defendant, the officer smelled the odor of burned marijuana. The trooper asked whether there was any more marijuana in the car. At this point, defendant handed the officer a package of cigarettes containing marijuana. This Court upheld the lower court's suppression of the marijuana as a product of improper questioning in violation of *Miranda.* Here, the immediate product of the improper questioning was Hernandez's statement that he had been smoking marijuana. Thus, the statements were properly suppressed.

In the Supreme Court opinion in *Hilber,* the Court held that the odor of marijuana smoke by itself was insufficient to constitute probable cause

to search a vehicle. In this case, as in *Hilber,* if Hernandez's statements are suppressed, the sole basis for the search was the smell of burned marijuana. Indeed, on appeal, the people's argument for admissibility is premised on probable cause being established by the odor *and* the incriminating statements.

The discovery of the guns occurred during the course of an illegal search. As such, they constituted the "fruit of the poisonous tree" and were properly suppressed. *Wong Sun v United States,* 371 US 471; 83 S Ct 407; 9 L Ed 2d 441 (1963), *Hilber, supra,* 667.

All of the authority cited by the people is inapposite as will be briefly discussed. In both *People v Dorner,* 66 Mich App 298; 238 NW2d 845 (1975), and *People v Dunlap,* 82 Mich App 171; 266 NW2d 637 (1978), the questioning by the police was of a general investigatory nature where it was unclear whether any crime had been committed. The odor of the marijuana in this case, however, immediately made defendants the focus of a criminal investigation.[3]

The people also cite *People v Rembo,* 73 Mich

[3] Michigan constitutional law provides that *Miranda* warnings must be given when the police investigation focuses on the accused. *People v Reed,* 393 Mich 342, 357-360; 224 NW2d 867 (1975), *cert den* 422 US 1044; 95 S Ct 2660; 45 L Ed 2d 696 (1975), *People v Ridley,* 396 Mich 603, 606-609; 242 NW2d 402 (1976), *People v Brannan,* 406 Mich 104, 118-120; 276 NW2d 14 (1979). Although some panels of this Court have refused to apply the focus test in light of United States Supreme Court decisions holding that custody triggers the requirement of *Miranda* warnings, *e.g., People v Schram,* 98 Mich App 292, 306-307; 296 NW2d 840 (1980), this position ignores the fact that the Michigan Supreme Court has continued to use the focus test long after the decisions in *Beckwith v United States,* 425 US 341; 96 S Ct 1612; 48 L Ed 2d 1 (1976), and *Oregon v Mathiason,* 429 US 492; 97 S Ct 711; 50 L Ed 2d 714 (1977). To hold that custody triggers *Miranda* is to assume that the Michigan Supreme Court was unaware of *Beckwith* and *Mathiason* when it decided *Brannan.* See, *People v Wallach,* 110 Mich App 37; 312 NW2d 387 (1981).

App 339; 251 NW2d 577 (1977), *People v Ridgeway,* 74 Mich App 306; 253 NW2d 743 (1977), *lv den* 401 Mich 831 (1977), and *People v Robert L Thompson,* 81 Mich App 54; 264 NW2d 118 (1978), for the proposition that the combination of the odor and statements satisfied the probable cause requirement. In *Rembo,* the defendant, while being arrested for driving while intoxicated, volunteered the information that he had been smoking a "joint". While defendant exited from the car, the police observed a prescription bottle in the front seat and the odor of marijuana in the vehicle. The result in the instant case would be different if, without interrogation, Hernandez had stated he had been smoking marijuana. In *Ridgeway,* the Court said probable cause was present where the officers smelled burning marijuana and observed a tinfoil packet in the vehicle which they knew from experience often contained narcotics. Here, unlike *Ridgeway,* there was nothing but the smoke to justify the search, if Hernandez's statements are suppressed. The *Ridgeway* Court also noted that the issue they were presented with was "extremely close". *Id.,* 314. It appears that *Ridgeway* represents the outer boundaries of admissibility. In *Robert L Thompson,* the police arrested defendant when they smelled burning marijuana. Thereafter, they searched defendant's person and found six marijuana cigarettes as well as a large sum of money. The Court determined that probable cause to search the vehicle existed because of the marijuana odor and the items uncovered during the lawful arrest. Once again, this case is distinguishable. Here the police admitted that they did not suspect contraband in the vehicle until after the illegal questioning occurred.

Affirmed.