## COMMONWEALTH *vs.* ALFRED L. AMENDOLA, JR.

Norfolk. October 3, 1989. - February 8, 1990.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Constitutional Law*, Search and seizure. *Search and Seizure*, Standing to object, Expectation of privacy, Automobile. *Controlled Substances*.

Discussion of the "automatic standing" rule of *Jones* v. *United States*, 362 U.S. 257 (1960). [596-599]

As a matter of State constitutional law under art. 14 of the Massachusetts declaration of rights, this court adopted the "automatic standing" rule that, when a defendant is charged with a crime as to which possession of certain seized evidence at the time of a contested search is an essential element of guilt, the defendant shall be deemed to have standing to contest the legality of the search and the seizure of the evidence. [599-601] NOLAN J., with whom LYNCH, J., joined, dissenting.

A criminal case was remanded for the judge to make written findings and rulings of law with respect to disputed factual issues raised by the defendant's motion to suppress evidence, in light of this court's announcement of the adoption of the "automatic standing" rule applicable to such a case. [601-602]

COMPLAINTS received and sworn to in the Quincy Division of the District Court Department on May 25, 1984.

On transfer to the jury session of the Dedham Division, motions to suppress were heard by *Thomas F. Fallon*, J., and the cases were tried before him.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Francis X. Goode* for the defendant.

*James Lang*, Assistant District Attorney, for the Commonwealth.

LIACOS, C.J. The defendant was convicted of possession of cocaine and marihuana (G. L. c. 94 C, § 34) and possession with intent to distribute marihuana (G. L. c. 94C, § 32C).

The defendant's motion to suppress items found in two automobiles was denied. The Appeals Court reversed the judgments and set aside the verdicts. 26 Mass. App. Ct. 713 (1988). The case is here on the Commonwealth's application for further appellate review. We remand the case to the trial judge for further findings and rulings of law.

1. *Facts.*

A record of the hearing on the motions to suppress having been unavailable, the parties filed a statement of agreed facts summarizing the testimony at the hearing. Mass. R. A. P. 8 (d), as amended, 378 Mass. 932 (1979).

Detective David Brown, of the drug task force in the Norfolk district attorney's office, testified that on May 29, 1984, he received information that a drug transaction was to take place in the early evening in Filene's parking lot at the South Shore Plaza in Braintree. He was told that one or more people would be coming to the plaza with fifteen to twenty pounds of marihuana in an older blue and white Pontiac Grand Prix automobile. The person in the Pontiac was to meet the operator of a brown station wagon. Brown testified that he and other officers set up surveillance of the parking lot.

According to Brown, Detective Peter Gallagher saw an older blue and white Pontiac Grand Prix automobile apparently canvassing the parking lot, going up and down the parking rows. The Pontiac eventually parked next to a brown Chrysler van. Two white males got out of the Pontiac. The passenger of the Pontiac (later identified as John M. Pires) went to the front of the Pontiac and sat on its hood. The driver of the Pontiac (later identified as the defendant) went to the brown van and spoke briefly to its driver. The defendant went into the shopping center leaving Pires sitting on the hood of the Pontiac. Approximately five minutes later the defendant returned to the Pontiac and spoke briefly to Pires. The defendant then walked away from the Pontiac.

Brown testified that he and Gallagher approached Pires, told him they were police officers, and asked him to identify himself. Pires identified himself and denied any knowledge of

the defendant or of the Pontiac. His right hand was clenched in a fist. Brown asked him what he was trying to hide and asked him to open his hand. When Pires refused, Brown forced Pires's hand open; in it was a key to the door and trunk of the Pontiac. Brown then reached into Pires's pants pocket and found an ignition key to the Pontiac. Pires still denied ownership or any knowledge of the Pontiac. Detective Gallagher looked into the glove compartment of the Pontiac to find its registration. Inside the glove compartment he saw a packet containing a white powder which he believed to be cocaine.

Gallagher and Brown proceeded to search the trunk of the Pontiac. In the trunk they found a plastic trash bag containing five smaller bags, each of which contained approximately three pounds of marihuana. The total weight of the marihuana was fourteen pounds, eight and one-half ounces.

After the cocaine and marihuana were found in the Pontiac, Sergeant Kenneth Moschella questioned the defendant, who was standing next to a red Triumph convertible, about 250 feet away from the Pontiac.[1] Moschella took the keys to the Triumph automobile from the defendant and used them to open the trunk, in which he found an electronic balance scale with a white powder residue on it which was later identified as cocaine. Pires and the defendant were both placed under arrest.

The defendant testified that he had previously owned the red Triumph and that he had given it to his girl friend, Valerie Adams. He testified that he was driving it with her knowledge and permission. He testified that he worked with his father in a spice and bread crumb business and that the scale was used for measuring small amounts of spices.

The defendant testified further that he drove to the South Shore Plaza parking lot in the red Triumph and that he went into Filene's to look for a particular kind of jacket. The store

---

[1] The Pontiac was registered to an Agnes Pires and the Triumph was registered to a Valerie Adams. Detective Gallagher's testimony was essentially the same as to Pires and the Pontiac.

did not have it and he returned to his automobile. He walked past the Pontiac. There he saw Pires, whom he knew. They had lived in the same neighborhood and Pires had been a classmate of the defendant at school for many years. The defendant stated that he exchanged greetings for about a minute with Pires. He then moved on toward the Triumph about 250 feet away, where he was challenged by Sergeant Moschella. In response, the defendant identified himself. He further stated that he never gave Moschella the keys and that the lock on the trunk was broken. He claimed that Moschella opened the trunk of the Triumph and searched it without permission. Also he testified that he did not drive the Pontiac and was never in the Pontiac.

The trial testimony, which has also not been preserved, was, according to the statement of agreed facts, essentially the same as the motion hearing testimony with the addition that Gallagher testified that he observed part of the conversation with Moschella and the defendant. Gallagher testified that he heard the defendant tell Moschella to search the trunk of the Triumph, and that the defendant voluntarily gave up the Triumph keys to Sergeant Moschella.

2. *The Appeals Court Opinion.*

The Appeals Court held that there was insufficient showing of probable cause to justify the warrantless search of the Triumph, and that, without the evidence obtained during that search, the evidence at trial did not support a conviction for possession of cocaine or marihuana. The court did not rule on the constitutionality of the search of the Pontiac.

As to the issue of the defendant's standing to assert his constitutional claims, the court stated: "Our resolution of the merits in the defendant's favor makes unnecessary any discussion of the questions whether the defendant had standing to object to either search. See *Rawlings* v. *Kentucky*, 448 U.S. 98, 104 (1980). Compare *Commonwealth* v. *King*, 389 Mass. 233, 240 (1983). See also in this regard, *Commonwealth* v. *Mora*, 402 Mass. 262, 265-267 (1988), and cases cited." *Commonwealth* v. *Amendola*, 26 Mass. App. Ct. 713, 717 n. 6 (1988).

In our view resolution of the probable cause question in the defendant's favor is not dispositive of the question whether the defendant had standing to challenge the search and seizure as to either vehicle. Under current Federal jurisprudence, the standing inquiry has merged into the substantive inquiry of whether the defendant's rights guaranteed by the Fourth Amendment to the United States Constitution were violated. See *Rakas* v. *Illinois*, 439 U.S. 128, 139 (1978); *Rawlings* v. *Kentucky*, 448 U.S. 98, 104-106 (1980). Under Federal principles, the defendant is required to show that "governmental officials violated [his] legitimate expectation of privacy." *Rawlings* v. *Kentucky*, *supra* at 106. A holding that there was no probable cause for the search bears no necessary relation to the preliminary question whether the defendant had a legitimate expectation of privacy. See *Commonwealth* v. *Podgurski*, 386 Mass. 383, 387 n.5 (1982), cert. denied, 459 U.S. 1212 (1983).

3. *Automatic Standing.*

The defendant urges us to adopt the "automatic standing" rule of *Jones* v. *United States*, 362 U.S. 257 (1960), as a matter of State constitutional law. In *Jones*, the defendant was charged, and later convicted of purchasing, selling, dispensing, and distributing narcotics, a crime which permitted conviction upon proof of the defendant's possession of narcotics. *Id.* at 258. Possession formed the basis of the government's case against the defendant. The defendant had been arrested in an apartment by Federal narcotics officers, who were executing a warrant to search for narcotics and who found narcotics and paraphernalia in a bird's nest in an awning just outside a window in the apartment. The defendant moved to suppress the fruits of the search. The government challenged the defendant's standing to make the motion because he alleged neither ownership of the seized articles nor an interest in the apartment greater than that of an invitee or guest.

The Supreme Court held that the defendant had standing to object to the search. The Court based its holding, in part, on the dilemma faced by a defendant charged with a crime

of possession. Should the defendant claim that he possessed the contraband in order to assert standing, the defendant essentially would admit to having committed the crime. Should the defendant exercise his right to remain silent, the defendant would sacrifice any challenge to the search and seizure. In these special circumstances, standing is conferred upon the defendant to challenge the search and seizure.

We think it appropriate to quote the *Jones* Court's reasoning at length:

> "Ordinarily . . . it is entirely proper to require of one who seeks to challenge the legality of a search as the basis for suppressing relevant evidence that he allege, and if the allegation be disputed that he establish, that he himself was the victim of an invasion of privacy. But prosecutions like this one have a special problem. To establish 'standing,' Courts of Appeals have generally required that the movant claim either to have owned or possessed the seized property or to have had a substantial possessory interest in the premises searched. Since narcotics charges like those in the present indictment may be established through proof solely of possession of narcotics, a defendant seeking to comply with what has been the conventional standing requirement has been forced to allege facts the proof of which would tend, if indeed not be sufficient, to convict him. At the least, such a defendant has been placed in the criminally tendentious position of explaining his possession of the premises. He has been faced, not only with the chance that the allegations made on the motion to suppress may be used against him at the trial . . . but also with the encouragement that he perjure himself if he seeks to establish 'standing' while maintaining a defense to the charge of possession." *Id.* at 261-262.

The *Jones* Court reasoned that to deny the defendant standing would permit the government to benefit unfairly from self-contradictory positions. According to the Court,

"to hold that petitioner's failure to acknowledge interest in the narcotics or the premises prevented his attack upon the search would be to permit the Government to have the advantage of contradictory positions as a basis for conviction. Petitioner's conviction flows from his possession of the narcotics at the time of the search. Yet the fruits of that search, upon which the conviction depends, were admitted into evidence on the ground that petitioner did not have possession of the narcotics at the time. The prosecution here thus subjected the defendant to the penalties meted out to one in lawless possession while refusing him the remedies designed for one in that situation. It is not consonant with the amenities, to put it mildly, of the administration of criminal justice to sanction such squarely contradictory assertions of power by the Government." *Id.* at 263-264.

The Supreme Court thus announced a rule which has come to be known as "automatic standing." "The same element in this prosecution which has caused a dilemma, i.e., that possession both convicts and confers standing, eliminates any necessity for a preliminary showing of an interest in the premises searched or the property seized, which ordinarily is required when standing is challenged." *Id.* at 263.[2]

In 1980, the United States Supreme Court abandoned the automatic standing rule in *United States* v. *Salvucci*, 448 U.S. 83 (1980). In an opinion written by then Associate Justice Rehnquist, the Court stated that the reasoning of the *Jones* opinion was no longer valid. The Court claimed that the self-incrimination dilemma no longer existed, because, in *Simmons* v. *United States*, 390 U.S. 377 (1968), the Court had held that "testimony given by a defendant in support of a motion to suppress cannot be admitted as evidence of his guilt at trial." *United States* v. *Salvucci, supra* at 88. The

[2]The Supreme Court in *Jones* held in the alternative that a defendant has standing if he was "legitimately on the premises" at the time of the search. *Id.* at 267.

*Salvucci* Court also asserted that prosecutorial self-contradiction was no longer a problem. Said the *Salvucci* Court:

> "To conclude that a prosecutor engaged in self-contradiction in *Jones*, the Court necessarily relied on the unexamined assumption that a defendant's possession of a seized good sufficient to establish criminal culpability was also sufficient to establish Fourth Amendment 'standing.' This assumption, however, even if correct at the time, is no longer so. . . . We simply decline to use possession of a seized good as a substitute for a factual finding that the owner of the good had a legitimate expectation of privacy in the area searched." *United States* v. *Salvucci, supra* at 90-92.

Until today, we have not had to face directly the viability of the automatic standing rule in Massachusetts. See *Commonwealth* v. *Mora*, 402 Mass. 262, 266-267 (1988) (automatic standing rule not applicable to facts of the case); *Commonwealth* v. *King*, 389 Mass. 233, 240 n.13 (1983) (outcome of expectation of privacy analysis makes decision whether to adopt automatic standing unnecessary); *Commonwealth* v. *Podgurski*, 386 Mass. 385, 391 n.11 (1982) (same). This case squarely presents the automatic standing question. The defendant was convicted of possession of cocaine and marihuana and possession with intent to distribute marihuana. The Commonwealth seeks to hold against the defendant his claimed lack of interest in the Pontiac or the contraband. We consider this case an appropriate occasion to announce the adoption of the automatic standing rule under art. 14 of the Massachusetts Declaration of Rights.[3]

---

[3]Article 14 of the Declaration of Rights may, in some circumstances, provide more substantive protection to criminal defendants than does the Fourth Amendment. *Commonwealth* v. *Upton*, 394 Mass. 363, 373 (1985). There need not be dramatically different language in each constitutional provision in order for us to reach a different opinion concerning the application of similar constitutional principles. *Id.* at 372. We conclude that, with respect to the doctrine of automatic standing, art. 14 provides more substantive protection than does the Fourth Amendment.

Commonwealth *v.* Amendola.

We think that the principal concerns of the *Jones* Court remain valid today, despite the current Supreme Court's shift in thinking. The Commonwealth, in order to prove possession, aims to show that the defendant was the driver of the Pontiac and was in possession of the contraband. But in arguing against standing, the Commonwealth claims that the defendant had no connection with the Pontiac and was not in possession of the contraband. The Commonwealth may not have it both ways.

Furthermore, it would be naive to credit, without any reservations, the defendant's disassociation from the Pontiac. The defendant was faced with the very dilemma discussed by the *Jones* Court. There is too great a risk that the defendant, in order to escape conviction, was willing to perjure himself by disclaiming any connection with the Pontiac. In addition, *Simmons, supra*, did not resolve the self-incrimination dilemma. "The use of the testimony for impeachment purposes would subject a defendant to precisely the same dilemma, unless he was prepared to relinquish his constitutional right to testify in his own defense, and would thereby create a strong deterrent to asserting Fourth Amendment claims." *United States* v. *Salvucci, supra* at 96 (Marshall, J., dissenting). See *State* v. *Simpson*, 95 Wash. 2d 170, 180 (1980).

In rejecting the Supreme Court's abandonment of the automatic standing rule, we join a number of States which have reached a similar conclusion. See *State* v. *Owen*, 453 So. 2d 1202 (La. 1984); *People* v. *Chernowas*, 111 Mich. App. 1 (1981); *State* v. *Settle*, 122 N.H. 214 (1982); *State* v. *Alston*, 88 N.J. 211 (1981); *Commonwealth* v. *Sell*, 504 Pa. 46 (1983); *State* v. *Wood*, 148 Vt. 479 (1987); *State* v. *Simpson, supra*. The Supreme Courts of New Hampshire, New

Article 14 provides in part: "Every subject has a right to be secure from all unreasonable searches, and seizures, of his person, his house, his papers, and all his possessions . . . ."

The Fourth Amendment to the United States Constitution provides in part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."

Jersey, Pennsylvania, and Vermont have all discarded expectation-of-privacy analysis in standing determinations. See *Settle, supra* at 219-220; *Alston, supra* at 226-228; *Sell, supra* at 66-67; *Wood, supra* at 489-490. While we consider it unnecessary to discard completely expectation-of-privacy analysis for the purposes of this case, we do recognize the risks in over-emphasizing such a manipulable standard while losing sight of other important considerations, such as those which animate the automatic standing rule. See W. LaFave, Search and Seizure § 11.3(c), at 308 (2d ed. 1987) (calling *Rawlings* v. *Kentucky*, 448 U.S. 98 [1980], upon which the *Salvucci* court strongly relied, "an ill considered application of the . . . expectation-of-privacy rule"). See also *Rawlings* v. *Kentucky, supra* at 118 (Marshall, J., dissenting) ("The interest in the item seized is quite enough to establish that the defendant's personal Fourth Amendment rights have been invaded by the government's conduct").

In conclusion, we hold today that the automatic standing rule survives in Massachusetts as a matter of State constitutional law. When a defendant is charged with a crime in which possession of the seized evidence at the time of the contested search is an essential element of guilt, the defendant shall be deemed to have standing to contest the legality of the search and the seizure of that evidence.[4]

4. *Disposition.*

Unfortunately, the trial judge failed to make any written findings or rulings of law and the transcription of the proceedings has been lost. Therefore, we do not have the benefit of knowing what was the basis of the judge's denial of the defendant's motion to suppress. Because there are disputed factual issues, we think it appropriate to remand the case to the judge for written findings and rulings of law, and for a

---

[4]We limit our adoption of the automatic standing rule to the facts of this case, namely, automobile searches, and to the facts of *Jones*, namely, house searches. We leave to a case by case analysis the question whether the rule should be extended to other circumstances where possession crimes are in issue.

hearing if the judge, in his discretion, finds it necessary. See *Commonwealth* v. *Bottari*, 395 Mass. 777, 778 n. 2 (1985).

On remand, the defendant is entitled to benefit from the automatic standing rule with respect to the search of the Pontiac automobile, for that search revealed the contraband which formed the basis of the possessory charges against the defendant. The judge shall determine whether there was probable cause to search the Pontiac, making the credibility judgments necessary to reach a conclusion on this issue. See *Commonwealth* v. *Moon*, 380 Mass. 751, 755-756 (1980).

It is important to note that the automatic standing rule which we announce today is not applicable to the search of the Triumph. The Triumph search revealed a scale, not an item which in and of itself would have been sufficient to convict the defendant for the possessory crimes of which he was accused. See *Jones*, *supra* at 261-262.

The defendant would have standing to challenge the search of the Triumph if he shows that he had a legitimate · expectation of privacy with respect to that vehicle. See *Commonwealth* v. *Podgurski*, 386 Mass 383, 387 (1982). In this regard, there are disputed questions as to whether the defendant consented to the search and as to what was his subjective expectation of privacy with respect to the trunk of that car.

We remand the case to the District Court for proceedings not inconsistent with this opinion.

*So ordered.*

NOLAN, J. (dissenting, with whom Lynch, J., joins). Once again, the court has invoked the Massachusetts Constitution to depart from settled Federal constitutional law without so much as a suggestion of authority. Absolutely nothing in art. 14 of the Massachusetts Declaration of Rights suggests a rule of automatic standing. In fact, the language of art. 14 is substantially the same as the language of the Fourth Amend-

ment to the United States Constitution from which the Federal rule of standing is derived.

I am apprehensive about the direction which this court is taking in proclaiming that the Massachusetts Constitution is more zealous in protection of a defendant's rights than the United States Constitution. This trend is far more serious than the decision in this case to adopt the rule of automatic standing of *Jones* v. *United States*, 362 U.S. 257 (1960), in preference to the rule of reasonable expectation of privacy of *United States* v. *Salvucci*, 448 U.S. 83 (1980), after the United States Supreme Court has rejected *Jones*. It seems that, whenever we wish to expand the rights of defendants in criminal cases, we simply invoke the Massachusetts Constitution without so much as a plausible argument that the Massachusetts Constitution requires the expansion. The court decides on the result that it wants and simply declares, if the result sought is more favorable to a criminal defendant than Federal law permits, that the Massachusetts Constitution compels such a result without the faintest suggestion of authority either in the language of the Massachusetts Constitution or elsewhere.

Perhaps the court has silently adopted the view that, if we say something frequently enough, it must be so. Descartes postulated: Cogito, ergo sum. We dictate: Dicimus, ergo ita est. I dissent.