COMMONWEALTH *vs.* ALAN PRICE.

Middlesex. April 3, 1990. - November 27, 1990.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Search and Seizure,* Expectation of privacy, Electronic surveillance, Standing to object. *Constitutional Law,* Search and seizure, Privacy. *Eavesdropping. Privacy.*

A criminal defendant had no reasonable expectation of privacy in his conversations in a motel room not registered in his name, over which he had neither control nor a right to control, and which had been selected by strangers; consequently, he had no standing to challenge the admissibility, at his trial for violations of the controlled substances laws, of videotape recordings with sound of those conversations, made by undercover police officers. [671-673] LIACOS, C.J., dissenting.

No other reasonable basis was shown for granting a criminal defendant, who lacked standing on the basis of a reasonable expectation of privacy, standing to challenge the admission in evidence of undercover videotape recordings of him purchasing marihuana. [673-675] LIACOS, C.J., dissenting.

INDICTMENTS found and returned in the Superior Court Department on August 14, 1986.

A pretrial motion to suppress evidence was heard by *John P. Forte,* J., sitting under statutory authority, and questions of law were reported by him to the Appeals Court. The Supreme Judicial Court granted a request for direct review.

*Catherine E. Sullivan,* Assistant District Attorney, for the Commonwealth.

*Judi M. Sanzo* for the defendant.

WILKINS, J. In July, 1986, Massachusetts State troopers secretly made videotapes of conversations held in a Woburn motel room between the defendant or his associates and certain State police officers, operating undercover, during which was discussed the sale of a large quantity of marihuana for

$121,000 in cash. The defendant was indicted for attempted trafficking in marihuana, for conspiracy to violate the controlled substances act by trafficking in marihuana, and for possession of a class C controlled substance (tetrahydrocannabinols).

The defendant moved to suppress the surveillance tapes, and, after numerous continuances, the defendant and the Commonwealth stipulated to the facts bearing on the motion to suppress. The motion judge reported four questions to the Appeals Court, and we allowed the parties' joint application for direct appellate review.

The questions, which are set forth in the margin,[1] concern the standing of the defendant to challenge the admissibility of the surveillance videotapes and, to the extent that the defendant has standing, whether there is a constitutional bar to the admission in evidence, respectively, of the audio and video components of the surveillance tapes. We conclude that the defendant lacked standing to challenge the admissibility of either component of the videotapes. Although not necessary to our opinion, we point out that, even if the defendant had standing, at least the audio portion of the tapes, which was obtained pursuant to a valid search warrant, would still be admissible because the search did not violate the prohibition of art. 14 of the Massachusetts Declaration of Rights against unreasonable searches and seizures.

---

[1] "1. Based on the facts of this case, does the defendant have standing to challenge the admissibility of the surveillance videotape?

"2. Based on the facts of this case, does the defendant have standing to challenge the admissibility of those portions of the surveillance videotape in which he is not present?

"3. As to any portions of the surveillance videotape which the defendant has standing to challenge, is the audio component of the surveillance videotape, made with the consent of a participating police officer and pursuant to a search warrant prepared on a form issued under G.L. c. 276, §§1-7, but not issued under G.L. c. 272, §99, admissible under article 14 of the Massachusetts Declaration of Rights?

"4. As to any portions of the videotape which the defendant has standing to challenge, is the video component of the tape, made without a search warrant, admissible under the Fourth Amendment and article 14 of the Massachusetts Declaration of Rights?"

We set forth the relevant facts. In the middle of July, 1986, State police officer John McCabe, acting undercover as a large scale marihuana distributor, entered into negotiations with three men, including Steven Smith and Lester Davis, to sell a large quantity of marihuana. The parties agreed that the sale would take place at a hotel room. McCabe then hired Room 248 of the Ramada Inn in Woburn for the meeting, and Room 250, from which other State police officers could monitor the transaction.

On July 16, 1986, with the assistance of two assistant district attorneys and a fellow State trooper, John Sprague, McCabe prepared an application for a search warrant pursuant to G. L. c. 276, §§ 1-7 (1988 ed.), and on that day a Superior Court judge authorized the issuance of a warrant to search for and seize "[c]onversation between John McCabe, Steven Smith and any other individual accompanying Steven Smith for the purposes of purchasing marijuana, regarding the purchase of marijuana. Rm. 248, Ramada Inn, Woburn." The application was accompanied by a ten-page affidavit and a consent to the interception of oral communications signed by McCabe.

On that same day, State police personnel installed a hidden microphone and video camera in Room 248. Wires from the microphone and video camera were run to Room 250, where a recorder could produce a videocassette tape with audio and video components and where a monitor allowed State police officers to see activities and hear conversations in Room 248.

At approximately 3 P.M. on July 16, McCabe telephoned Smith and told him to come to Room 248 at 7:30 P.M. to complete the sale of the marihuana. Monitoring and recording of activity in Room 248 began prior to 7:30 P.M.. Troopers McCabe and Sprague were in the room at that time. Smith, however, did not arrive at the room until 9:20 P.M., accompanied by Davis. Smith told McCabe and Sprague that "Al," who had the money for the marihuana, was waiting in the lobby. Smith and Davis left the room, and returned a short time later with "Al," who is the defendant.

The defendant told McCabe and Sprague that he had brought $65,000 in cash, showed them his money, and stated that he could get more if additional marihuana were available. The defendant and the troopers agreed that the defendant would buy 185 pounds of marihuana for $121,000. The defendant left with McCabe to inspect the marihuana, leaving Smith and Sprague in the room.

The defendant returned shortly, apparently satisfied with the quality of the marihuana, and told McCabe and Sprague that he would drive to his home in Lowell to get the extra money. The defendant brought Davis and one Leslie Anderson up from the hotel lounge to stay in the room with the $65,000 and the troopers while he left with Smith. Approximately one hour later, the defendant and Smith returned with a bag of money. On a prearranged signal, other police officers involved in the investigation arrested the defendant and the others. The electronic surveillance was stopped shortly thereafter.

The first question asks generally about the standing of the defendant to challenge the admissibility of the videotapes. We construe that question to be asking whether the defendant has standing to raise the constitutional search and seizure issues presented in questions three and four.[2]

---

[2] The judge has asked no substantive question concerning the possible exclusion of the videotapes because they may have been obtained in violation of the Massachusetts electronic surveillance statute (G. L. c. 272, § 99 [1988 ed.]). Section 99 P grants a defendant a right to move to suppress the contents of an intercepted communication in certain circumstances. It is doubtful, however, that § 99 is applicable here. It appears, but we do not decide, that there was no "interception" within the meaning of § 99 B 4 because Trooper McCabe consented to the recording and the investigation involved a major drug sale. See *Commonwealth* v. *Davis*, 407 Mass. 1001 (1990). In any event, the wiretap statute presents issues entirely separate from art. 14 issues. We have not incorporated the requirements and procedures of § 99 into art. 14. *Commonwealth* v. *Davis, supra* at 1002.

In the application for a search warrant, Trooper McCabe explicitly noted that the offenses he was investigating were "designated offenses" under § 99 B 7, a circumstance that, if true, would make § 99 inapplicable when coupled with McCabe's consent to the interception. The defendant makes no claim that, if § 99 is inapplicable, the police lacked authority to obtain the warrant.

The defendant relies on the standing test that is normally applied under both art. 14 of the Massachusetts Declaration of Rights and the Fourth Amendment to the United States Constitution. Under this test, to have standing, the defendant must have had a subjective expectation of privacy in the recorded conversations and society must be willing to recognize that expectation as reasonable. See *California* v. *Ciraolo,* 476 U.S. 207, 211 (1986), citing *Katz* v. *United States,* 389 U.S. 347, 360 (1967) (Harlan, J., concurring); *Commonwealth* v. *Panetti,* 406 Mass. 230, 231-232 (1989); *Commonwealth* v. *Blood,* 400 Mass. 61, 68 (1987).

We shall assume that the defendant had an expectation of privacy in his conversations in the motel room. Society is not prepared, however, to accept any such expectation as reasonable. The defendant and his associates were engaged in negotiating a major business transaction with people whom he had just met, and whom his associates had first met the day before. Nevertheless, he brought $121,000 in cash to a motel room that was not registered in his name, but rather in the name of someone about whom he knew almost nothing. He engaged in an arm's length business negotiation with strangers in a place over which he had neither control nor a right to control and which had been selected by the strangers.

The facts of this case are meaningfully different from a warrantless transmission and recording of private conversations in a person's home. See *Commonwealth* v. *Blood, supra.* There is in this Commonwealth a strong tradition of constitutionally based protection of citizens from governmental intrusion into their homes. There is no similar tradition that protects against recording business conversations in strangers' motel and hotel rooms. As Justice Liacos presciently wrote for the court in *Commonwealth* v. *Blood, supra* at 73, "a distinction lies in the disparity between that sense of security which is felt among trusted friends and the feelings of hostility encountered among competitors or combatants." A viewing of the videotapes shows that the transaction was an arm's length one with manifestations of suspicion and distrust. Because, in these circumstances, society will not

recognize the defendant's expectation of privacy as reasonable, the defendant did not have standing under the traditional standing test.

There are certain circumstances in which this court has recognized a defendant's standing, or possible standing, without consideration of the defendant's expectation of privacy. In *Commonwealth* v. *Amendola,* 406 Mass. 592, 601 (1990), we adopted an "automatic standing" rule for one who seeks to contest the legality of the search and seizure of evidence if possession of that seized evidence is an essential element of the crime charged. That decision to confer standing was based largely on a concern that the Commonwealth not be permitted to argue that a defendant had possession for the purposes of establishing his guilt but that he lacked sufficient connection with the contraband to have standing to challenge its seizure. *Id.* at 600. The automatic standing rule does not aid the defendant here because the items he seeks to suppress (the videotapes) are not contraband with whose unlawful possession he is charged. In *Commonwealth* v. *Manning,* 406 Mass. 425, 429 (1990), we discussed the theory of "target standing" whereby an individual would gain standing to challenge the search of another, not to protect any reasonable expectation of privacy, but to deter police misconduct. We did not decide whether to recognize target standing in the *Manning* case because the record did not show that the police had intentionally engaged in a violation of someone else's constitutional rights in order to obtain evidence against the defendants.

This case does not present any reasonable basis for granting the defendant standing to challenge the admission of the videotapes, even though he lacked standing on the basis of a reasonable expectation of privacy. A recognition of standing in other circumstances must have a foundation in serious police misconduct (such as described in the *Manning* opinion) or in fundamental unfairness (such as is discussed in the *Amendola* opinion). No police misconduct or basic unfairness is involved here. The police obtained a search warrant that authorized them to record the audio portion of the con-

versations. The affidavit in support of issuance of the search warrant demonstrated ample probable cause to authorize the recording of the conversations. As we have said (see note 2 above), G. L. c. 272, § 99, has no application to art. 14 issues. If we needed to reach question three, we would answer it in the affirmative, upholding the admissibility of the audio portion of the videotapes under art. 14 principles.[3]

The fact that the police proceeded pursuant to a warrant authorizing the recording of the conversations in the motel room eliminates any logical basis for granting standing on the ground of police misconduct or basic unfairness. We need not, of course, decide how we would answer questions one and three if the police had not obtained a search warrant. The absence of a warrant authorizing the seizure of the video portion of the tapes, a relatively minor intrusion beyond the warranted audio recording, is not so egregious as to confer special standing to challenge the video portion of the tapes.

Although we have recognized that in certain circumstances art. 14 rights extend beyond those stated in the Fourth Amendment in order to protect against improper government conduct, the adoption of an exclusionary rule concerning the videotapes in this case could have a materially adverse effect on the truth-finding function. The police officers will be permitted to testify concerning the conduct and conversations in the motel room and would be entitled to do so even if we were to suppress the videotapes in full. *Commonwealth* v. *Blood, supra* at 77-78. Any rule that would exclude objective evidence, presumably more accurate than human memory, of events happening and words spoken in the motel room should have a strong justification. A warrantless electronic surveillance in a person's home, even with the consent of one participant in the conversations, can provide that justification (*Commonwealth* v. *Blood, supra*), and, even there, not every-

---

[3]No warrant would be needed under Fourth Amendment principles because of the consent of Trooper McCabe. See *United States* v. *Caceres*, 440 U.S. 741, 749-751 (1979); *United States* v. *White*, 401 U.S. 745, 751-753 (1971); *Commonwealth* v. *Thorpe*, 384 Mass. 271, 282 (1981), cert. denied, 454 U.S. 1147 (1982). Question three asks only about art. 14.

one agrees (*id.* at 78, Nolan, J., dissenting, joined by Lynch, J.). The circumstances of this case, however, provide no reasonable justification for excluding relevant, instructive, unbiased, and seemingly accurate evidence bearing on the guilt or innocence of the defendant.

We answer question one in the negative: the defendant lacks standing to challenge the admissibility of the surveillance videotapes. The answer to question two is, of course, "No." Questions three and four need no answers because they are asked on the assumption that the defendant has standing.

LIACOS, C.J. (dissenting). The court today holds that the defendant lacks standing to challenge the admissibility of covertly obtained videotapes which show the defendant purchasing marihuana from undercover State troopers. The analysis adopted by the court to reach this result, however, could be applied just as easily to deny standing to challenge secret videotapes of any number of legal activities undertaken by citizens of this Commonwealth each day. Furthermore, the court's opinion will encourage the police to engage in surreptitious videotaping without a warrant specifically authorizing such activity. The warrant in this case on which the court relies to justify the secret videotaping activity, as well as the secret audio recording, is inappropriate for both these forms of electronic surveillance. I am concerned that the impact of today's decision will be to sanction unregulated covert electronic surveillance, thereby diminishing the privacy rights of the people of this Commonwealth. Accordingly, I dissent.

The court bases its denial of standing on the conclusion that the defendant could not have had a reasonable expectation of privacy in his conversations in the motel room. In support of this conclusion, the court notes that: (1) the defendant was negotiating a major business transaction with people he and his associates had just met; (2) the negotiations took place in a motel room which was registered in the name of a

person about whom the defendant knew almost nothing; and (3) the transaction between the defendant and the State troopers was conducted at "arm's length," with "manifestations of suspicion and distrust." *Ante* at 672. My difficulty with the court's analysis in this regard is that the factors it considers in rejecting the defendant's expectation of privacy as unreasonable would appear to apply with equal force to a legitimate business meeting conducted in a hotel suite or conference room. Many lawful business transactions are carried out between strangers and in surroundings over which at least one party may have no control. Furthermore, it should surprise no one that many, if not most, legitimate business negotiations are conducted at "arm's length" and involve "manifestations of suspicion and distrust." Would not society accept as reasonable, for example, a real estate buyer's expectation that confidential negotiations regarding the sale of land conducted in a hotel conference room rented by the seller would remain private? The reasonable expectation of privacy analysis laid out by the court provides no guidance as to how this situation is distinguished from that of the defendant. If I am correct in my assessment of the court's opinion, the right of our citizens to challenge covert electronic surveillance of legitimate private activity will be improperly diminished.

The court appears confident that privacy rights will not suffer as a result of its opinion in part because the State troopers conducting the electronic surveillance in this case had a search warrant. The court recognizes that the warrant authorized only audio surveillance, and not video surveillance, but concludes that the additional unwarranted video surveillance was "a relatively minor intrusion beyond the warranted audio recording." *Ante* at 674. As an initial matter, I suggest that this court should tread with extreme caution in approving the seizure of items not specifically described in a search warrant. Article 14 of the Massachusetts Declaration of Rights specifically requires that all search warrants "be . . . accompanied with a special designation of the persons or objects of search, arrest, or seizure." See

*Commonwealth* v. *Rutkowski,* 406 Mass. 673, 675-676 (1990); *Commonwealth* v. *Taylor,* 383 Mass. 272, 275 (1981). See also G. L. c. 276, § 2 ("[s]earch warrants . . . shall particularly describe the property or articles to be searched for"). The fact that a judge issued a warrant authorizing the State troopers in this case to search for, and seize, one type of evidence should not be taken as providing the police carte blanche to seize any evidence they can lay their hands on. This court should be particularly sensitive to the particularity requirement of art. 14 when the unwarranted search involves electronic surveillance. Video surveillance has been described as "exceedingly intrusive, especially in combination . . . with audio surveillance, and inherently indiscriminate, and . . . could be grossly abused — to eliminate personal privacy as understood in modern Western nations." *United States* v. *Torres,* 751 F.2d 875, 882 (7th Cir. 1984), cert. denied, 470 U.S. 1087 (1985). See *United States* v. *Cuevas-Sanchez,* 821 F.2d 248, 250 (5th Cir. 1987) (videotape surveillance described as a "potentially indiscriminate and most intrusive method of surveillance"); *Application for Order Authorizing Interception of Oral Communications & Videotape Surveillance,* 513 F. Supp. 421, 422 (D. Mass. 1980) (combination of videotape and audio surveillance described as "extraordinarily intrusive"). Given the exceptionally intrusive nature of video surveillance, this court should be loath to allow the admission of covert videotapes in the absence of a warrant specifically authorizing their use for a particular purpose.

I am also concerned with the court's conclusion that the audio surveillance in this case was properly authorized by a warrant. *Ante* at 673-674. The troopers recorded and seized the conversations in the motel room pursuant to a search warrant obtained under G. L. c. 276, §§ 1-7 (1988 ed.), which provides in general for search warrants. However, the Legislature has provided a special procedure to obtain audio surveillance search warrants under G. L. c. 272, § 99 (1988 ed.), which differs substantially from the terms of G. L. c. 276, §§ 1-7. The most significant difference between the

warrant procedures of the two statutes is that under G. L. c. 272, § 99 E 3, a warrant applicant must show that "normal investigative procedures have been tried and have failed or reasonably appear unlikely to succeed if tried." This requirement demonstrates the Legislature's intention that electronic surveillance of citizens by law enforcement officials in this Commonwealth be the exception, and not the rule. This requirement, it would appear, is directly linked to the Legislature's conclusion that "the uncontrolled development and unrestricted use of modern electronic surveillance devices pose grave dangers to the privacy of all citizens of the commonwealth." G. L. c. 272, § 99 A.

While a warrant under G. L. c. 272, § 99, takes into account the Legislature's concern with the dangers of electronic surveillance, a warrant to conduct electronic surveillance under G. L. c. 276, §§ 1-7, incorporates no such concern. A c. 276 warrant could issue irrespective of the fact that the evidence to be obtained through electronic surveillance could be gathered easily through standard police procedures. Surreptitious electronic surveillance conducted pursuant to c. 276 warrants could become a routine occurrence, unwarranted by any particular need for the unique characteristics of electronic surveillance. Such a result would be likely to raise serious conflicts with the right to privacy guaranteed by art. 14. See, e.g., *Commonwealth* v. *Blood*, 400 Mass. 61 (1987). It is my opinion that a search warrant issued under G. L. c. 276, §§ 1-7, is inadequate to protect the privacy rights of the citizens of this Commonwealth against the dangers of electronic surveillance. Therefore, I would hold that the warrant in the present case was inadequate to justify the audio or video surveillance of the defendant. Accordingly, I would exclude the audio and video recordings as the products of an impermissible warrantless search.

"Since it is the task of the law to form and protect, as well as mirror and reflect, we should not, as judges, merely recite the expectations and risks without examining the desirability of saddling them upon society. The critical question, therefore, is whether under our system of government, as reflected

in the Constitution, we should impose on our citizens the risks of the electronic listener or observer without at least the protection of a warrant requirement." *United States* v. *White*, 401 U.S. 745, 786 (1971) (Harlan, J., dissenting). The citizens of this Commonwealth should not have to live with the fear that at any given moment they might be the subject of unauthorized covert electronic surveillance by the police.

This court previously has recognized the threat that electronic surveillance poses to an individual's right of privacy. In *Commonwealth* v. *Blood*, *supra* at 70, we noted that "because the peculiar virtues of [electronic eavesdropping] techniques are ones which threaten the privacy of our most cherished possessions, our thoughts and emotions, these techniques are peculiarly intrusive upon that sense of personal security which art. 14 commands us to protect." When faced with the unique dangers of electronic surveillance, we should not allow the fate of the privacy rights of the citizens of this Commonwealth to rest upon the calculation of a standard as "manipulable" as expectation of privacy analysis. See *Commonwealth* v. *Amendola*, 406 Mass. 592, 601 (1990). I would hold that, regardless of an individual's expectation of privacy, art. 14 forbids the covert use of electronic surveillance by the police in the absence of an appropriate warrant specifically authorizing such activity. In my view, such a holding would be consistent also with the clear limitations on electronic surveillance set by the Legislature by enacting G. L. c. 272, § 99. This landmark statute, more restrictive than Federal law, see 18 U.S.C. §§ 2510 et seq. (1970), and *Commonwealth* v. *Thorpe*, 384 Mass. 271, 288-289 (1981) (Liacos, J., dissenting), cert. denied, 454 U.S. 1147 (1982), should be viewed as a manifestation of the Legislature's attempt to meet its own constitutional responsibility to carry out the mandate of art. 14. Were we to take this view, electronic surveillance procedures would be available to law enforcement officials while still subject to judicial review to prevent the unnecessary violation of art. 14 privacy rights. "It is the purpose of the warrant requirement in art. 14 to

subject police suspicions to the scrutiny of 'a neutral and detached magistrate instead of [leaving them to be] judged by the officer engaged in the often competitive enterprise of ferreting out crime.' " *Commonwealth* v. *Blood, supra* at 72-73, quoting *Johnson* v. *United States*, 333 U.S. 10, 14 (1948). I dissent.