Carhart, Judd J., J.

Background

The defendants have moved to suppress the fruits of a warrantless search conducted by the Ware police on October 28, 2004. An evidentiary hearing was conducted on May 2, 2005. After considering the evidence presented at the hearing, the motions are allowed.

Facts

Based upon the testimony and exhibits presented at the evidential hearing, I find the following facts:
In the early evening of October 28, 2004, a call to the Ware Police Department reported a stabbing at Apartment 22-D Highway Village in Ware (“Apartment 22-D”). Two officers responded initially to the call, finding two injured men, Aaron Gasque and Ryan Natoo, within the apartment. One of these men told the officers someone had come into the apartment, stabbed them, and left. Both men were transported to the hospital. The apartment showed evidence of blood stains, but no suspect was present. There were narcotics and drug paraphernalia in plain view. The responding officers called in two trained narcotics investigators, Officer Shawn Crevier (“Officer Crevier”) and Sargent Kenneth Kovitch (“Sargent Kovitch”). Kovitch knew Apartment 22-D to be rented by the brother of the defendant, Darcy Sinclair (“Sinclair”).
Sargent Kovitch, in an attempt to find the knife that was alleged to have been used in the stabbing, went into the backyard of Apartment 22-D. Apartment 22-D is one of five attached apartments. Each unit has a *505 back patio and shed. There are no fences delineating the boundaries of each backyard, but it is clear from the evidence that each unit has a separate backyard area.
Once in the backyard area, Sargent Kovitch noticed a pile of leaves and pine needles adjacent to the foundation of the unit’s shed. Sargent Kovitch kicked the pile of leaves, exposing two bags. One bag was clear plastic and the other was black cloth. Both officers testified to recognizing the bags did not contain a knife, but substances they believed to be cocaine and marijuana. After taking pictures of their discovery, the officers re-hid the narcotics. Officer Crevier set up surveillance in the nearby woods.
Officer Crevier observed Sinclair approach the back patio from the woods. She initially went to the drain pipe of the apartment, then walked to the black and clear bags containing narcotics. She picked them up and ran toward Officer Crevier, who was hidden in the vegetation. Officer Crevier apprehended Sinclair and placed her under arrest. Officer Crevier then transported Sinclair to the police station, leaving the apartment unattended. At some point, Sinclair informed Officer Crevier there were more narcotics at the apartment and, according to him, the knife used in the stabbing. Sinclair further stated that she learned this information through the co-defendant, Jamil Archer (“Archer”), who had not been mentioned or involved up to that point. The officers returned to Apartment 22-D with a metal detector. He also observed a folded car seat on the back patio. Officer Crevier unfolded the car seat, saw a metal box wedged there, opened the box and found cocaine. They seized the cocaine, and resumed hidden surveillance of the apartment. Later, Archer came through the back apartment door onto the patio and searched around the patio. He went back into the apartment, then returned to search again. He then left by the apartment front door. He was later arrested for Trafficking in 28-100 grams of Cocaine.

Discussion

The defendants seek to suppress narcotics hidden on Apartment 22D’s back patio and shed foundation. In the defendants’ view, these items were the fruits of a warrantless search without exigent circumstance. The Commonwealth presents a two-pronged argument against suppression. First, they contend, there was no search of the shed’s foundation area, in the constitutional sense, because it was not part of Apartment 22-D and there was no expectation of privacy there.[1] Secondly, the Commonwealth argues that even if both searches were conducted within the premises of Apartment 22-D, the defendants cannot create their own expectation of privacy — and its resulting protections from a warrantless search — from that of the legal tenant. Accordingly, the Commonwealth contends, the defendants have no standing from which to contest whether Apartment 22-D was properly searched.

A. Whether a Search Occurred at the Shed’s Foundation

The defendant has the burden of establishing that a search occurred. Commonwealth v. Carter, 424 Mass. 409, 411 (1997). “(Wjhether a search in the constitutional sense has taken place . . . turns on whether the police conduct has intruded on a constitutionally protected reasonable expectation of privacy.” Commonwealth v. Montanez, 410 Mass. 290, 301 (1991).
Absent exigent circumstances or consent, the Fourth Amendment to the United States Constitution and Article 14 of the Declaration of Rights of the Massachusetts Constitution prohibit warrantless searches and seizures of a person’s home. Commonwealth v. Sanaa, 424 Mass. 92, 96 (1997) (internal citations omitted); Commonwealth v. Walker, 370 Mass. 548, 555, cert. denied, 429 U.S. 943 (1976). Warrant requirements for the search of a home also apply to certain outside areas, referred to as curtilage. Commonwealth v. Straw, 422 Mass. 756, 762 (1996). “When used in a Fourth Amendment context, curtilage helps to define those areas the police generally cannot search without a warrant.” Commonwealth v. McCarthy, 428 Mass 871, 874 (1999). Curtilage was originally defined as the area immediately surrounding a dwelling. United States v. Dunn, 480 U.S. 294, 300 (1987). While there is no “finely tuned formula” for curtilage determinations, considerations include whether the area is within the proximity of the home, the nature of its regular and intended use, and who would be likely to use it. McCarthy, 428 Mass. at 874-75; Straw, 422 Mass. at 760 citing California v. Ciraolo, 476 U.S. 207, 212-13 (1986) (“[T]he backyard of [a] private dwelling is viewed as [an] extension of the home”); Commonwealth v. Thomas, 358 Mass. 771, 774-75 (1971). For areas closely related, or incident to, the occupancy of an apartment, even if not within its curtilage, it is providential for police to secure a warrant before any search. Commonwealth v. Pancheco, 21 Mass.App.Ct. 565, 569, n.4 (1986).
Relying on McCarthy, the Commonwealth argues that Apartment 22-D’s shed is a common area where no expectation of privacy exists. The Commonwealth’s argument is unavailing. In McCarthy, the Supreme Judicial Court concluded that a visitor’s parking space, located in the open parking lot of an apartment complex, was beyond a particular apartment’s curti-lage. In the instant case, Apartment 22-D’s shed is contiguous to its patio, which is conceded by the Commonwealth to be curtilage. The shed has personal furniture leaning against its outside walls. The shed foundation is part of the apartment’s footprint.
Although the Commonwealth correctly notes that Apartment 22-D’s tenant did not fence in the backyard area, this factor is but one consideration in the determination of whether the shed’s foundation area qualifies as curtilage. Each of the five apartments has a *506 shed. Apartment 22-D’s shed is inches away from the back door, shares a common wall with the apartment, is clearly part of the apartment’s original construction, and is oriented to provide a level of privacy to the patio area. The nearby plantings shield the area from public view and access, and visitors would not naturally expect to pass through when approaching the apartments.
I find that the shed is part of Apartment 22-D’s curtilage. Accordingly, the evidence located against its foundation was found pursuant to a search of Apartment 22-D, in the constitutional sense of the word.

B. Standing to Contest the Search

Since neither of the defendants was the owner or leasor of Apartment 22-D, they must establish standing to contest the validity of Apartment 22-D’s search. Both defendants maintain their standing stems from the required element of possession within each of the Trafficking offenses for which they were charged. Commonwealth v. Amendola, 406 Mass. 592, 601 (1990).[2]
The Commonwealth counters that Amendola, alone, does not confer standing to the defendants. Without pointing to specific evidence, the Commonwealth states that Archer must have been at Apartment 22-D prior to the police, and hidden the narcotics. Sinclair, the Commonwealth further speculates, “was there to steal [the narcotics] from Archer and she got caught.” Relying on these bare assertions, and Commonwealth v. Carter, 424 Mass. 409, 412 (1997), the Commonwealth argues that neither defendant could unlawfully intrude on someone else’s reasonable expectation of privacy to establish their own.
In 1990, Commonwealth v. Amendola, 406 Mass. 592, 599 (1990), Massachusetts adopted the “automatic standing” rule of Jones v. United States, 362 U.S. 257 (1960). The Court was explicit. “As a matter of State constitutional law, under art. 14 of the Massachusetts Declaration of Rights, ‘[w]hen a defendant is charged with a crime in which possession of the seized evidence at the time of the contested search is an essential element of guilt, the defendant shall be deemed to have standing to contest the legality of the search and the seizure of that evidence.’ ” Amendola, 406 Mass, at 601.
C. The Propriety of the Search
“In the absence of a valid warrant, the Commonwealth has the burden of demonstrating that a war-rantless search was justified by exigency.” Lewin, 407 Mass. at 621 citing Commonwealth v. Huffman, 385 Mass. 122, 124 (1982). “[T]he standards as to exigency are strict.” Id. at 621, citing Huffman, 385 Mass at 124-25.
Exigent circumstances exist when police officers arrive at the scene of a violent crime and, accordingly, they may conduct a protective sweep of the area. Lewin at 627, citing Thompson v. Louisiana, 469 U.S. 17, 211 (1984). The scope of such a sweep is limited to a cursory inspection for victims or suspects in spaces where a person may be found. Lewin at 622 n.4 citing Maryland v. Buie, 494 U.S. 325, 336 (1990). “Items of possible evidence found in plain view during the course of this limited protective search maybe seized.” Lewin citing Mincey, 437 U.S. at 393.
For, any further search, particularly for evidence, police officers must obtain a warrant. Expansion into a general investigatory search is strictly prohibited. The exigency ends as soon as the “victim-or-suspect” search is completed. Without a warrant, all items seized during an investigatory search must be suppressed. The officers may not “exploit” the initial entry. Commonwealth v. Alvarez, 422 Mass. 198, 210-11 (1996); Commonwealth v. Cruz, 53 Mass.App.Ct. 24, 27 (2001).
When the police officers arrived at Apartment 22-D, they found two injured men — neither of whom was the legal tenant. They properly conducted a cursory protective sweep of the area. During that sweep, in plain view, the officers noticed a small amount of narcotics and drug paraphernalia. No other victims or suspects were found. After the sweep was concluded, two narcotics officers were called to the apartment. These two officers admittedly began an investigatory search, albeit for a knife, which included a pile of leaves and pine needles against the apartment’s backyard shed. Later, they returned with a metal detector and began a second investigatory search for narcotics, focusing on the apartment’s patio and drainpipe. The narcotics officers did not obtain a warrant for either investigatory search.
As discussed above, the defendants have standing to contest the validity of these searches.
The Commonwealth concedes that exigent circumstances were not present, that the relevant narcotics were not in plain view and that they had the ability to obtain a warrant. Their search of Apartment 22-D was, therefore, improper. Commonwealth v. DeJesus, 439 Mass. 616, 623-24 (2003). Accordingly, all evidence seized from the patio and shed foundation during these two warrantless searches — specifically, the cocaine and marijuana found against the shed foundation, and the cocaine found inside a box within a folded car seat stored on the back patio — must be suppressed. See Wong Sun v. United States, 371 U.S. 471, 484 (1963); Commonwealth v. Lahti, 398 Mass. 820, 833 (1986).

ORDER

For the reasons discussed above, the defendants’ Motion to Suppress is hereby GRANTED and all evidence seized from the patio and shed foundation of Apartment 22-D is suppressed.

The Commonwealth concedes the back patio was part of Apartment 22-D.

The relevant offenses in this case contain knowing or intentional possession as an essential element of guilt. G.L.c. 94C, §32E(b); G.L.c. 94C, §34.