PEOPLE v CLEMENT

Docket No. 51913. Submitted November 4, 1980, at Lansing.—Decided
    June 17, 1981.

    Daniel J. Clement was convicted of possession of marijuana with
    intent to deliver in the Schoolcraft Circuit Court, William F.
    Hood, J. Prior to trial, defendant contested the validity of a
    search and the resulting seizure at his place of residence
    pursuant to a bench warrant for the arrest of a third person
    who did not reside at his home. The court denied suppression of
    the evidence. Defendant appeals. *Held:*

        Under the circumstances, the search was illegal and the
    evidence seized should have been suppressed.

        Reversed.

1. Searches and Seizures — Constitutional Law.
    The Fourth Amendment applies equally to seizures of persons
    and to seizures of property.

2. Searches and Seizures — Presumptions.
    Searches and seizures inside a home without a warrant are
    presumptively unreasonable.

3. Searches and Seizures — Homes of Third Parties — Arrest.
    A search warrant is needed before the home of a third party may
    be searched for a suspect named in an arrest warrant unless
    there exist exigent circumstances or there is consent to search.

4. Searches and Seizures — Exigent Circumstances.
    Exigent circumstances giving rise to a proper search without a
    warrant exist where the police have the probable cause neces-
    sary to secure a warrant but circumstances make it impossible
    for them to obtain the warrant in time.

REFERENCES FOR POINTS IN HEADNOTES
[1] 68 Am Jur 2d, Searches and Seizures §§ 10, 16.
[2] 68 Am Jur 2d, Searches and Seizures § 35.
[3] 5 Am Jur 2d, Arrest §§ 90, 91.
    68 Am Jur 2d, Searches and Seizures §§ 37-59.
[4] 68 Am Jur 2d, Searches and Seizures § 41 *et seq.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *John L. Thomas,* Prosecuting Attorney, and *Thomas C. Nelson,* Assistant Attorney General, for the people.

*Gail Rodwan,* Assistant State Appellate Defender, for defendant on appeal.

Before: Beasley, P.J., and R. M. Maher and R. S. Hoffius,* JJ.

R. M. Maher, J. Defendant was convicted, following a jury trial, of possession of marijuana with intent to deliver. MCL 335.341(1)(c); MSA 18.1070(41)(1)(c).[1] He was sentenced to three years probation, the first five months to be spent in the county jail, and now appeals by right.

Before trial defendant contested the validity of a search and the resulting seizure of about five pounds of marijuana and assorted paraphernalia. At the suppression hearing Schoolcraft County Friend of the Court John Carstensen testified that on August 17, 1978, he obtained a bench warrant for the arrest of one Austin John Diller. The warrant was based on Diller's failure to appear on an order to show cause regarding his failure to pay child support. Carstensen testified that he turned the warrant over to the sheriff's department that same day and that he included Diller's official address of Gulliver, Michigan. He also told the sheriff's department that there was information indicating that Diller could be found at an upstairs apartment at 220 Elk Street in Manistique, Michigan. This information had come from Gary Demers, a social worker with the Department of Social

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] The statute has since been repealed. Now see MCL 333.7401(2)(c); MSA 14.15(7401)(2)(c).

Services, who testified that he had noticed Diller leaving the Elk Street address on two occasions at around 5:30 or 5:45 in the evening. Demers also testified that he did not know if Diller lived at the Elk Street address. Demers relayed this information to Carstensen, who relayed it to the sheriff's department along with the warrant.

The parties stipulated to the admission of the preliminary examination testimony at the suppression hearing.[2] At the preliminary examination Deputy Robert Fisk testified that on the evening of August 19, 1978, he and his partner, Deputy Gerald Jack, proceeded to the Elk Street address in order to attempt to arrest Diller. Fisk testified that an index card and a piece of paper attached to the warrant indicated that Diller might be found at the Elk Street address. Upon arriving, Fisk ascended the stairs to the entrance of the second floor apartment while Jack headed around back to cover any rear exits. Fisk testified that he heard two male voices and music playing. After knocking on the door, calling Diller's name, identifying himself as a police officer, and indicating that he had a warrant for Diller's arrest, Fisk heard his partner call out that someone was attempting to leave through a rear window. Fisk then tried to open the door, which was unlocked but held in place by a night chain. While Fisk was pounding on the door to break the chain the defendant appeared at the door and unfastened the chain. Fisk knew Diller on sight and asked defendant where Diller was. When defendant stated that

---

[2] In *People v Talley*, 410 Mich 378; 301 NW2d 809 (1981), the Supreme Court specifically disapproved of the practice of relying *exclusively* on preliminary examination transcripts to decide suppression motions. The suppression hearing in the instant case was held well before the date that *Talley* was decided, and we note that the trial court did not "exclusively" rely on the transcripts of the examination in deciding the motion.

Diller was not there, Fisk proceeded to conduct a search of the apartment in order to locate Diller. Deputy Jack arrived inside the apartment and identified the defendant as the person he had seen trying to open the rear window. No one other than the defendant was found in the apartment.[3] While Fisk was conducting his search, he observed the items seized laying on a bench in a bedroom believed to be defendant's.

Pursuant to the observations made by Fisk, two search warrants were obtained[4] and the marijuana and paraphernalia were seized. While the warrants were being sought, David Neville and his partner from the Manistique police department were stationed inside the apartment. Officer Neville testified that while he was in the apartment Diller walked in and was arrested.

From the testimony introduced at the trial, it appears that the apartment in question was rented to a Christine Beahn, who in turn had sublet a room to the defendant. Beahn was Diller's fiancee, so that he often spent time at the apartment.[5]

Because the search warrants were issued on the basis of Fisk's observations, the question is whether Fisk was legally in the apartment at the time he observed the marijuana and paraphernalia. The entry would appear to be supported by MCL 764.21; MSA 28.880, which provides:

"To make an arrest, a private person, if the offense be a felony committed in his presence, or a peace officer

[3] At defendant's trial Diller testified that he had been in the apartment, but that he had managed to leave by way of a side window.

[4] The prosecution conceded that the second of these warrants was defective.

[5] On appeal, the prosecution does not argue that the apartment was Diller's home, but rather addresses the issue in terms of an entry into a third party's home.

with a warrant or in cases of felony when authorized without a warrant, may break open an inner or outer door of any building in which the person to be arrested is or is reasonably believed to be if, after he has announced his purpose, he is refused admittance."

Defendant first argues, however, that the statute is unconstitutional as applied to the instant case insofar as it purports to dispense with the need for a search warrant (or the showing of circumstances amounting to a traditional exception to the search warrant requirement) as a prerequisite to the search of a third party's home in the attempt to apprehend a person named in a valid arrest warrant. Const 1963, art 1, § 11, US Const, Am IV, Am XIV.

This issue has engendered much recent case law. The United States Supreme Court began by deciding a similar issue in *Payton v New York,* 445 US 573; 100 S Ct 1371; 63 L Ed 2d 639 (1980). In the two separate cases consolidated under that title, police had entered the homes of two different suspects in order to make routine felony arrests without any sort of warrant. The defendants sought to suppress evidence which had been seized during the arrests, but suppression was denied on the basis of a New York statute similar to the Michigan statute quoted above. Based on extensive analysis of the common-law antecedents to the Fourth Amendment, and the positions of the various states and federal circuits on the issue of arrests in the home, the Court held that "the Fourth Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment * * * prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest". *Payton, supra,* 576. The Court also

held that in cases such as those before it, where the home to be entered is the *suspect's* home, only an arrest warrant was necessary.

"It is true that an arrest warrant requirement may afford less protection than a search warrant requirement, but it will suffice to interpose the magistrate's determination of probable cause between the zealous officer and the citizen. If there is sufficient evidence of *a citizen's participation in a felony* to persuade a judicial officer that his arrest is justified, it is constitutionally reasonable to require *him* to open his doors to the officers of the law. Thus, for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling *in which the suspect lives* when there is reason to believe the suspect is within." *Payton, supra,* 602-603. (Emphasis added.)

The Court was careful to point out that *Payton* did not "raise any question concerning the authority of the police, without either a search or arrest warrant, to enter a third party's home to arrest a suspect". *Payton, supra,* 583. Accordingly, the Court left open the question of the legality of an entry into a third party's home, and more precisely the question of whether a *search* warrant is needed for such an entry. Much of the Court's analysis in *Payton* nevertheless pointed to the ultimate resolution of these remaining questions. The Court in *Payton* quickly determined that "[t]he simple language of the [Fourth] Amendment applies equally to seizures of persons and to seizures of property" and that the "analysis in this case may therefore properly commence with rules that have been well established in Fourth Amendment litigation involving tangible items". *Payton, supra,* 585. Turning to those cases, the Court reiterated that the "physical entry of the home is

the chief evil against which the wording of the Fourth Amendment is directed", *Payton, supra,* 585, quoting *United States v United States District Court,* 407 US 297, 313; 92 S Ct 2125; 32 L Ed 2d 752 (1972), and that "[i]t is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable". *Payton, supra,* 586. (Footnote omitted.) The Court then concluded this section of its analysis by stating: "In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton, supra,* 590. These Fourth Amendment interests could be protected by an arrest warrant in a case where the suspect's own home was to be searched since the arrest warrant reflects a determination sufficient to invade that person's reasonable expectations of privacy. An arrest warrant in no way considers the privacy interests a third party has in his or her own home, however, so that it was reasonable to conclude that if a warrant of some sort was needed before any home could be searched for a suspect, a *search* warrant, or some exception, would be needed when that home belonged to a third party.

Subsequent to the decision in *Payton,* two cases decided by the federal circuit courts of appeal answered the questions left open in *Payton* by indicating that a search warrant, or an exception, was required for the search of a third party's home.[6] At issue in *Wallace v King,* 626 F2d 1157

---

[6] *Prior* to the Supreme Court's decision in *Payton* the circuits were split on the question of whether a search warrant was needed before the police could legally search the home of a third party for a suspect named in an arrest warrant. See, *e.g., Government of the Virgin*

(CA 4, 1980), was the legality of searches conducted at the homes of two separate couples without a search warrant. The goal of these searches was the arrest of a woman named in a valid arrest warrant who was being sought for her refusal to obey a court order in a child custody matter. The police had information indicating that the woman might be found at the homes of the two couples. The homes were searched solely on the basis of the arrest warrant and the information indicating that the woman might be present on the premises searched. After recognizing that *Payton* had laid the groundwork for its decision, the Court held:

> "Reasonable or probable cause to believe that a person for whom an arrest warrant has been issued is on the premises, standing alone, is not sufficient. Although *Payton* held that an arrest warrant requires that a suspect 'open his doors to the officers of the law,' that holding was specifically limited to the 'dwelling in which the suspect lives.' 445 US at 603; 100 S Ct at 1388. An arrest warrant indicates only that there is probable cause to believe the suspect committed a crime; it affords no basis to believe that the suspect is in a stranger's house." *Wallace, supra,* 1161.[7]

In *United States v Adams,* 621 F2d 41 (CA 1, 1980), federal agents and local police searched the defendant's home looking for an escaped prisoner whom they had reasonable cause to believe was staying with the defendant. No warrant of any sort was obtained. The trial court suppressed evidence of the fugitive's arrest in the defendant's home at the defendant's trial for harboring a

*Islands v Gereau,* 502 F2d 914, 928-930 (CA 3, 1974), *cert den* 420 US 909; 95 S Ct 829; 42 L Ed 2d 839 (1975) (search warrant required), *United States v Cravero,* 545 F2d 406, 420-421 (CA 5, 1976), *cert den* 429 US 1100; 97 S Ct 1123; 51 L Ed 2d 549 (1977) (arrest warrant alone sufficient).

[7] See, also, *Gereau, supra,* note 6, 928.

fugitive and the first circuit affirmed on appeal. Although the court specifically declined to decide what sort of warrant was required since no warrant at all had been obtained, *Adams, supra,* 44, fn 7, the court did hold that the search could be upheld only if there were exigent circumstances. Because the presence of exigent circumstances, coupled with probable cause (which existed in *Adams)* constitutes a recognized exception to the requirement of a search warrant, the court's holding supported the view that either a search warrant or a recognized exception to the requirement of such a warrant is needed.

After submission of the instant case the United States Supreme Court resolved the questions left open in *Payton* in a manner consistent with the decisions in *Wallace* and *Adams.* In *Steagald v United States,* — US —, —; 101 S Ct 1642; 68 L Ed 2d 38 (1981), agents of the Drug Enforcement Administration received information indicating that Ricky Lyons, the subject of an outstanding arrest warrant, could be found at a home in the Atlanta, Georgia, area. Three people lived at this home, including Gary Steagald, and all three were present when 12 law enforcement officers arrived with the arrest warrant looking for Lyons. The home was searched and, while Lyons was not found, a substance thought to be cocaine was. Based on the officers' observations, a search warrant was obtained and 43 pounds of cocaine were discovered. Steagald was arrested and indicted on federal drug charges. His motion to suppress the evidence was denied and he was convicted on the charges.

The Supreme Court began by stating "[t]he issue in this case is whether, under the Fourth Amendment, a law enforcement officer may legally search for the subject of an arrest warrant in the home of

a third party without first obtaining a search warrant". *Steagald, supra,* 68 L Ed 2d 38, 41. In analyzing this issue, the Court began by reiterating *Payton's* holding that a warrant is needed before entering a home to search for either property or persons. *Steagald, supra.* The Court then distinguished the interests protected by an arrest and a search warrant, noting that the arrest warrant for Lyons did nothing to protect Steagald's interests in the privacy of his home. The Court resolved the stated issue by concluding that, absent exigent circumstances or consent, a search warrant is needed before the home of a third party may be searched for a suspect named in an arrest warrant.

In the instant case neither consent nor exigent circumstances were demonstrated. Although it is true that the defendant opened the door to the apartment before Deputy Fisk broke it open, the circumstances do not support a finding that defendant, or anyone else, consented to a search of the premises. The prosecution suggests that the apparent attempt of someone to escape out a back window gave rise to exigent circumstances justifying the warrantless search. While it is true that an attempted escape by the accused may give rise to exigent circumstances, *People v Strelow,* 96 Mich App 182, 189; 292 NW2d 517 (1980), *People v Harris,* 95 Mich App 507, 510; 291 NW2d 97 (1980), the argument is misplaced under the circumstances of this case. The rationale underlying the exigent circumstances exception is that "when the police have the probable cause necessary to secure a warrant, but circumstances make it impossible for them to obtain the warrant in time, then it is 'reasonable' under the Fourth Amendment to conduct a search * * *". *People v Dugan,*

102 Mich App 497, 503; 302 NW2d 209 (1980). In the instant case the warrant for Diller's arrest had been issued two days prior to the search, and since at least the date of its issuance the authorities suspected that Diller might be found at the Elk Street apartment. Accordingly, there was more than sufficient time in which to attempt to secure a search warrant, and the failure to do so cannot be justified on the basis of exigency.

Because there was no search warrant and no circumstances supporting an exception to the requirement of such a warrant, the search was illegal and the trial court's refusal to suppress the evidence seized pursuant to observations made during the search was clearly erroneous. The evidence should have been suppressed. Because of our disposition of this case, we do not need to address defendant's alternative argument concerning the legality of the search.

Reversed.