*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

DEBRA JEAN SWIENTAL,

       Defendant-Appellant.

UNPUBLISHED
November 9, 2021

No. 357024
Cass Circuit Court
LC No. 21-010042-FH

Before: MURRAY, C.J., and MARKEY and RIORDAN, JJ.

PER CURIAM.

Defendant appeals by interlocutory leave granted[1] following the circuit court's denial of her motion to quash and dismiss the charge of assaulting/resisting/obstructing a police officer under MCL 750.81d(1). We vacate the circuit court's order denying defendant's motion to quash and dismiss, and remand to the circuit court for further proceedings consistent with this opinion.

## I. BASIC FACTS

This case stems from an interaction between defendant and Deputy Mike Fall of the Cass County Sheriff's Office. On December 12, 2020, defendant's son called the police to inform them that an individual named Dale Judd was at defendant's residence and inquired whether there was a warrant for Judd's arrest. At that time, there was an outstanding arrest warrant for Judd, so Deputy Fall went to defendant's residence. Once at defendant's residence, Deputy Fall spoke with defendant's son, who said that Judd was in the residence. When Deputy Fall knocked on the door and spoke with defendant, he told defendant that he had an arrest warrant for Judd. Defendant confirmed that Judd was in the house, but she told Deputy Fall that there was no problem and that she did not consent to Deputy Fall's entering the house. Deputy Fall then pushed the door open and saw Judd sitting inside the house. At that point, Deputy Fall entered the house and attempted

---

[1] *People v Swiental*, unpublished order of the Court of Appeals, entered July 26, 2021 (Docket No. 357024).

-1-

to arrest Judd. A struggle ensued, during which defendant allegedly jumped onto Deputy Fall and interfered with his attempt to arrest Judd.

Defendant was arrested and charged with assaulting/resisting/obstructing a police officer under MCL 750.81d(1). After a preliminary hearing in the district court, defendant was bound over for trial on that charge. Defendant moved the circuit court to quash the bindover and dismiss the charge on the basis that Deputy Fall's entry of her home was unlawful, and therefore, she had the right to resist. The circuit court denied defendant's motion, concluding that MCL 764.21 authorized Deputy Fall's entry into her residence. Defendant moved for immediate reconsideration, which was denied. Defendant now appeals.

## II. DEPUTY FALL'S ENTRY OF DEFENDANT'S RESIDENCE

Defendant's first claim of error is that the circuit court erred when it found Deputy Fall's entry into her residence to be lawful and denied her motion to quash and dismiss. We agree.

This Court reviews a trial court's decision on a motion to quash for an abuse of discretion. *People v Miller*, 288 Mich App 207, 209; 795 NW2d 156 (2010). "A trial court abuses its discretion when its decision falls outside the range of principled outcomes." *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010) (quotation marks and citation omitted). This Court reviews de novo the trial court's interpretation of the law in relation to a motion to quash. *Miller*, 288 Mich App at 209.

The circuit court denied defendant's motion to quash and dismiss, concluding that MCL 764.21 authorized Deputy Fall to enter defendant's residence. The circuit court also concluded that it would have made a mockery of jurisprudence to require Deputy Fall to obtain a search warrant when he had an arrest warrant for Judd and had received confirmation that Judd was in the house from both defendant and her son.

MCL 764.21 provides as follows:

> A private person, when making an arrest for a felony committed in his or her presence, or a peace officer or federal law enforcement officer, when making an arrest with a warrant or when making a felony arrest without a warrant as authorized by law, may break open an inner or outer door of a building in which the person to be arrested is located or is reasonably believed to be located if, after announcing his or her purpose, he or she is refused admittance.

This Court addressed whether MCL 764.21 authorizes police officers to enter the residence of a third party to execute an arrest warrant in *People v Clement*, 107 Mich App 283; 309 NW2d 236 (1981). In *Clement*, police officers attempted to execute an arrest warrant for an individual at a third party's residence after being informed that the subject of the arrest warrant had been seen leaving that apartment. *Id*. at 284-285. When no one answered the front door, an officer attempted to break down the door. *Id*. at 285. While the officer was attempting to break down the front door, Daniel Clement, a resident of the apartment, opened the front door and told the officer that the subject was not there. *Id*. at 285-286. The officer then walked into the apartment to look for the subject. *Id*. at 286. Inside the apartment, the officer saw what was later determined to be

marijuana. *Id*. The police then obtained two search warrants for the apartment. *Id*. Clement was ultimately convicted of possession of marijuana with intent to deliver. *Id*. at 284.

On appeal, *Clement* began its analysis by stating that the officer's entry into the third-party residence "would appear to be supported by MCL 764.21." *Id*. at 286. This Court then analyzed two opinions of the United States Supreme Court: *Payton v New York*, 445 US 573; 100 S Ct 1371; 63 L Ed 2d 639 (1980), and *Steagald v United States*, 451 US 204; 101 S Ct 1642; 68 L Ed 2d 38 (1981). *Clement*, 107 Mich App at 287, 291. *Clement* reiterated the holding of *Steagald* that "absent exigent circumstances or consent, a search warrant is needed before the home of a third party may be searched for a suspect named in an arrest warrant." *Id*. at 292. *Clement* also reiterated the holding of *Payton* that "the Fourth Amendment . . . prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." *Id*. at 287 (quotation marks and citation omitted).

This Court concluded that the officer's entry into the third-party residence violated Clement's Fourth Amendment rights despite suggesting that MCL 764.21 authorized the entry. *Id*. at 286. *Clement* acknowledged the existence of MCL 764.21, and then ruled that the officers executing the arrest warrant at the third-party residence were still required to have exigent circumstances, consent, or a search warrant to enter the third-party residence to execute the arrest warrant. *Id*. at 292. Although not explicitly stated in the opinion, *Clement* clearly implied that MCL 764.21 does not provide independent authority for police officers to enter the home of a third party to search for a suspect named in an arrest warrant, absent either (1) exigent circumstances, (2) consent, or (3) a search warrant. See *id*. at 293.

In the instant case, defendant argued that *Clement*, *Payton*, and *Steagald* establish that Deputy Fall's entry into her residence to execute the arrest warrant for Judd was unlawful and that the circuit court erred when it held that MCL 764.21 authorized Deputy Fall to enter defendant's residence without consent, exigent circumstances, or a search warrant. We agree that the circuit court erred when it determined that obtaining a search warrant was superfluous and that *Clement* and *Steagald* were inapplicable to the instant case because of the reasonableness of Deputy Fall's belief that Judd was inside the residence. To repeat, "absent exigent circumstances or consent, a search warrant is needed before the home of a third party may be searched for a suspect named in an arrest warrant." *Clement*, 107 Mich App at 292.[2]

The circuit court distinguished the instant case from *Clement* and *Steagald* on the strength of Deputy Fall's belief that Judd was inside defendant's residence. But in *Steagald*, the United

---

[2] To be clear, *Clement*, *Steagald*, and the instant case concern the Fourth Amendment rights of the resident of the third-party home. They do not concern the Fourth Amendment rights of the subject of the arrest warrant. As numerous federal circuits have recognized, the subject of an arrest warrant who is apprehended in a third-party home cannot complain that his or her own Fourth Amendment rights were violated. See *United States v Bohannon*, 824 F3d 242, 251 (CA 2, 2016) ("We here adopt this reasoning as our own and join our sister circuits in concluding that the subject of a valid arrest warrant cannot complain that <u>his</u> Fourth Amendment right to be free from an unreasonable seizure was violated by apprehension in a third party's home, entry to which was not authorized by a search warrant.") (emphasis in original).

States Supreme Court held that absent consent or exigent circumstances, the Fourth Amendment required police to obtain a search warrant, "[r]egardless of how reasonable" the police officer's belief was that the subject of the arrest warrant was in the third-party residence. *Steagald*, 451 US at 213. Thus, the circuit court erred when it concluded that a search warrant is not required if the police officer's belief that the subject of an arrest warrant is inside a third-party residence is reasonable.

In sum, the circuit court erred when it held that Deputy Fall's entry into defendant's residence was lawful under MCL 764.21 and therefore abused its discretion to that extent.

### III. LAWFUL POLICE ACTION IS AN ELEMENT OF MCL 750.81D(1)

Defendant next claims that because Deputy Fall's entry of her residence was unlawful, the circuit court erred when it denied her motion to quash and dismiss. We agree in part.

Under MCL 750.81d(1),

> an individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties is guilty of a felony punishable by imprisonment for not more than 2 years or a fine of not more than $2,000, or both.

However, an individual has a common-law right to resist an unlawful arrest. See *People v Moreno*, 491 Mich 38, 52; 814 NW2d 624 (2012).

In *Moreno*, police officers went to a residence in an attempt to execute an arrest warrant for an individual who was not a resident of that home. *Id*. at 42. A resident of the home answered the door and did not consent to police officers entering the home. *Id*. A struggle ensued between police officers and the defendant, also a resident of the home, when police officers attempted to enter the home. *Id*. at 42-43. The defendant was arrested and charged with assaulting/resisting/obstructing a police officer under MCL 750.81d(1). *Id*. at 43. Our Supreme Court held that MCL 750.81d(1) did not abrogate the common-law right to resist an unlawful arrest. *Id*. at 51-52. The Supreme Court then held that the prosecution had the burden of establishing that the police officer's actions were lawful to prove a charged offense under MCL 750.81d. *Id*. at 52. The case was remanded to the trial court with instructions to grant the defendant's motion to quash the charges on the basis that the police officer's conduct was unlawful. *Id*. at 58. Later, in *People v Quinn*, 305 Mich App 484, 492; 853 NW2d 383 (2014), this Court applied the holding in *Moreno* and held that the prosecution must establish that the police officers acted lawfully as an actual element of the crime of resisting or obstructing a police officer under MCL 750.81d.

In the instant case, the circuit court denied defendant's motion to quash and dismiss because it found that Deputy Fall's entry into the home was lawful. However, as explained previously, the circuit court erred when it reasoned that MCL 764.21 independently authorized Deputy Fall's entry into defendant's residence. To the extent that the circuit court engaged in such incorrect reasoning, it abused its discretion. We therefore vacate its order denying defendant's motion to quash and dismiss.

Nonetheless, although we vacate its order to that effect, we stop short of reversing it and directing the circuit court to grant defendant's motion. The circuit court found that Judd did not live at defendant's residence, but there was conflicting evidence presented as to whether Deputy Fall had a reasonable belief that Judd lived at that residence. Because it was not addressed in the circuit court or on appeal, we will not analyze whether Deputy Fall reasonably believed at the time that Judd resided within defendant's residence, and whether such a belief would render his entry of defendant's residence lawful under *Payton*. See *Payton*, 445 US at 602-603. See also *United States v Lauter*, 57 F3d 212, 215 (CA 2, 1995) ("Agents may enter a suspect's residence, *or what they have reason to believe is his residence*, in order to effectuate an arrest warrant where a reasonable belief exists that the suspect is present.") (emphasis added). That issue may be addressed on remand.

## IV. ADMISSION OF VIDEO FOOTAGE

Defendant's next claim of error is that the circuit court erred when it admitted video footage from Deputy Fall's body-worn camera. Defendant argues that this evidence should have been excluded pursuant to the exclusionary rule and that this video was improper impeachment evidence. For the reasons that follow, defendant's argument that the evidence should have been excluded pursuant to the exclusionary rule is moot, and we disagree that the circuit court erred by admitting improper impeachment evidence.

Ordinarily, a trial court's decision to admit evidence is within the trial court's discretion and should only be reversed if the trial court abuses its discretion. *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010). When the admission of evidence involves a preliminary question of law, the trial court's decision is reviewed by this Court de novo. *Id*.

However, at the circuit court hearing, defendant did not object to the admission of the video footage on the basis that it was improper impeachment evidence. The impeachment issue is therefore unpreserved. See *People v Kimble*, 470 Mich 305, 309; 684 NW2d 669 (2004) ("An objection based on one ground is usually considered insufficient to preserve an appellate attack based on a different ground."). Unpreserved issues are reviewed for plain error. *People v Grant*, 445 Mich 535, 552-553; 520 NW2d 123 (1994). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*.

Because we have already ruled that the circuit court erred when it concluded that Deputy Fall's entry into defendant's residence was lawful under MCL 764.21, it is unnecessary to determine whether the video footage should have been excluded on the basis that Deputy Fall's entry of the residence was unlawful.[3] If, on remand, the circuit court determines that Deputy Fall's entry of the home was unlawful, then the charge against defendant should be dismissed. In that

---

[3] See *People v Stevens*, 460 Mich 626, 633; 597 NW2d 53 (1999) ("The introduction into evidence of materials seized and observations made during an unlawful search is prohibited by the exclusionary rule.").

case, this issue would be moot, and it would be unnecessary to analyze whether this evidence should be excluded. If, on remand, the circuit court determines that Deputy Fall's entry of the home was lawful, then the exclusionary rule would not preclude the admission of the video footage from his body-worn camera.

With regard to the impeachment argument, evidence is generally admissible if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. To impeach a witness is to attack the witness's credibility. See MRE 607; MRE 609. "The purpose of extrinsic impeachment evidence is to prove that a witness made a prior inconsistent statement—not to prove the contents of the statement." *People v Jenkins*, 450 Mich 249, 256; 537 NW2d 828 (1995).

The circuit court record demonstrates that this evidence was not proffered for the purpose of impeaching a witness. The prosecution initially attempted to have the video footage admitted to support Deputy Fall's testimony of the incident. The prosecution withdrew that request after defendant objected. However, after testimony from defendant's sons, the prosecution renewed its request to admit the video footage. The prosecution stated that the testimony of defendant's sons skewed the facts. Defendant again objected on the basis that the footage did not capture a visual of the incident. Although the purpose for admitting that evidence was not explicitly stated at the hearing, the record supports the conclusion that it was admitted as substantive evidence of what occurred, and not as evidence designed to attack the credibility of any witness. When evidence is offered to establish a fact, it does not become "impeachment evidence" merely because it is contrary to the testimony of a witness.

As such, defendant has not demonstrated that the circuit court plainly erred by admitting the allegedly improper impeachment evidence. See *Carines*, 460 Mich at 763.

V. MISCHARACTERIZATION OF THE NATURE OF JUDD'S ARREST WARRANT

Defendant's final claim of error is that the circuit court erred in its characterization of Judd's arrest warrant.[4] We deem this claim to be abandoned.

It is unclear from defendant's argument how she believes the circuit court mischaracterized Judd's arrest warrant, or how that impacted the outcome of the case. Because defendant has not developed this argument, or even identified with any specificity the alleged mischaracterization, we deem this issue to be abandoned. See *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004) ("An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue.").

---

[4] In this section of defendant's brief, she states that Judd was not shown the arrest warrant until three months after his arrest, in violation of MCL 764.18. This issue was first raised on appeal and is, therefore, unpreserved and is reviewed for plain error affecting substantial rights. See *Carines*, 460 Mich at 763. Defendant has failed to establish how she was prejudiced by this alleged violation of Judd's statutory rights.

## VI. CONCLUSION

We vacate the circuit court's order denying defendant's motion to quash and dismiss, and we remand this matter to the circuit court for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Jane E. Markey
/s/ Michael J. Riordan