*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

GEORGE GERALD RIDER,

        Defendant-Appellant.

UNPUBLISHED
June 1, 2023

No. 350096
Macomb Circuit Court
LC No. 2017-003420-FC

AFTER REMAND

Before: SHAPIRO, P.J., and O'BRIEN and REDFORD, JJ.

PER CURIAM.

This case returns to us after remand to the trial court. In our prior opinion,[1] we determined that trial counsel for defendant George Rider did not provide effective assistance when he erroneously agreed that a warrant authorized the seizure of one of defendant's cell phones. We remanded for an evidentiary hearing on the matter while retaining jurisdiction. After the hearing was held, the trial court determined that defendant is not entitled to a new trial because although no warrant authorized the seizure, the exigent-circumstances exception applied, and therefore defendant did not suffer any prejudice from counsel's error. For the reasons stated in this opinion, we affirm.

## I. BACKGROUND

This case arises from the January 13, 2017 murder of Julii Johnson. Co-defendant Marcie Griffin initially was identified as a suspect because of the extreme hostility she exhibited toward Johnson and Johnson's current boyfriend, James Lattner, who was Griffin's ex-boyfriend. *People v Rider*, unpublished per curiam opinion of the Court of Appeals, issued August 18, 2022 (Docket No. 350096), pp 3-4. Griffin's cell phone records indicated that she had communicated with a

---

[1] Judge SAWYER was on the original panel, but Judge O'BRIEN has since substituted for him in light of his retirement.

phone number ending with 4616 the evening before the murder and in the morning after the shooting. *Id*. at 4. Being very interested in who was using the 4616 phone and what information that phone contained, the police obtained a warrant on January 27, 2017. As explained in our prior opinion, that warrant only authorized the retrieval of records from the cell-phone service provider; it did not authorize the physical seizure of the phone itself. *Id*. at 7-8. During the lower court proceedings, defense counsel agreed that the January 27, 2017 warrant authorized the phone's physical seizure when the police encountered defendant on February 4, 2017. We determined that this conclusion was plainly incorrect because the relied-upon warrant only authorized "data and records" from the cell-phone provider. *Id*. at 7-8. Because the seizure was accomplished without a valid warrant, we concluded that defense counsel did not provide effective assistance by taking the position that the warrant authorized the search. *Id*. at 9.

While there are exceptions to the warrant requirement, none was offered in the trial court because the prosecution had no reason to do so when no party was contesting the applicability of the January 27 warrant. *Id*. Consequently, we remanded for an evidentiary hearing, after which the trial court was to

> decide (1) whether the warrantless seizure was nonetheless reasonable, i.e., did a recognized exception to the warrant requirement apply, (2) if no exception applies, whether the exclusionary rule bars the use of any evidence discovered during a search of the 4616 phone, and (3) to the extent that evidence was admitted at trial that should not have been admitted, whether there is a reasonable probability that the outcome of Rider's trial would have been different had the evidence not been admitted. [*Id*. at 9-10.]

We subsequently granted the parties' joint motion that the scope of the remand include all evidence seized on February 4, 2017, not just the 4616 phone. See *People v Rider*, unpublished order of the Court of Appeals, entered September 6, 2022 (Docket No. 350096).

On remand, the trial court conducted the evidentiary hearing. Only two witnesses testified: Sergeant Brandon Roy and now Lieutenant Charles Rushton, and their testimony was consistent with the evidence adduced at trial.

Roy was the intelligence officer in the investigation, whose role was to collect and analyze cell phone forensic data. He testified that after collecting Griffin's phones, he determined that one of the phones had communicated with the 4616 phone both before and after the time of the murder. Roy then obtained a search warrant on January 27 to collect data and records from the service provider for the 4616 phone, which also included a request for GPS "pinging" data. From the cell phone records, Roy discovered that the 4616 phone had utilized a cell tower that was consistent with the location of the murder scene the evening before the shooting. Further, surveillance video showed the suspect vehicle fleeing the scene at 7:30 the morning of the shooting, and cell phone data showed that at 7:42 the 4616 phone was utilizing a cell tower that was about 12 minutes away from the scene. The 4616 phone was registered to a business, Midtown Entertainment Group, and the officers were unable to find the name of an individual associated with the phone number. The location of the 4616 phone was unknown at that time as it had ceased transmitting its location to the network, indicating the phone was turned off.

On Saturday, February 4, 2017, the phone resumed pinging its location and it was determined that the phone was located on Greater Mack Avenue in St. Clair Shores. Rushton drove straight to the Greater Mack address and surveilled the area, along with a detective who was already there. At 10:20 a.m., Rushton saw an individual (later identified as defendant) drive away in a white Ford Explorer. Rushton followed the Explorer, while a detective remained surveilling the Greater Mack address. Around the time the Explorer entered a car wash, pinging data confirmed that the phone was moving with the Explorer.

Rushton stated that there were several factors that led to the decision to stop the vehicle as it exited the car wash and seize the 4616 phone. Rushton was concerned that there was a narrow window to collect the phone because it had already been disconnected from the network for a period of time and was scheduled to soon be disconnected from service. Stated differently, the officers were concernd that they could lose the pinging location data and also the vehicle they were following. Roy explained that it is difficult to follow a vehicle in traffic while not being detected. Rushton was also concerned about a potential high-speed pursuit if the vehicle were allowed to leave the car wash.

Rushton had a marked police vehicle block the Explorer's exit from the car wash. Defendant was ordered out of the vehicle and two phones were seized from defendant's pockets after conducting a pat down. One of the phones was later determined to be the 4616 phone. Knowing he did not have a warrant to search the phones themselves, Rushton did not "go into" them. Additionally, a third cell phone was seen sitting on the Explorer's passenger seat. When Rushton asked if he could take it, defendant refused. Rushton then decided to leave that phone in the vehicle and the vehicle was impounded. A search warrant was executed for the vehicle later and the third phone was recovered. Another warrant was issued that authorized a search of the contents of all three phones.

After the conclusion of the evidentiary hearing, the parties filed supplemental briefs with the trial court and oral argument was held. The prosecutor argued that defendant could not establish any prejudice because the warrantless seizure was nonetheless legal under the exigent-circumstances exception. The prosecutor averred that the police in the instant case had ample probable cause and that there were exigent circumstances because they feared that, although the pinging on the phone became "active" on February 4, there were no assurances that this would continue. Defense counsel argued that any exigency was of the police's own making because they failed to obtain a warrant after learning of the address on Greater Mack and the identification of the white Explorer. Defense counsel stressed that it had been weeks since the murder, which obviates any exigency. In rebuttal, the prosecutor argued that the exigency existed before they stopped defendant's vehicle, i.e., the exigent circumstances were that the police had been unable to locate the 4616 phone in the weeks since the murder or ascertain who the phone belonged to, and the phone was scheduled to be disconnected from service.

The trial court issued an opinion and order ruling that the exigent-circumstance exception to the warrant requirement applied. The court first found that probable cause existed to believe that the phones within the white Explorer contained evidence of the murder. The court also found that Roy and Rushton articulated "specific and objective facts" that demonstrated an imminent need to prevent the loss or destruction of the pertinent data on the phones. The court further determined that the police did not create the exigent circumstances. Accordingly, the court ruled

that the warrantless seizure of the phones was reasonable because the exigent-circumstances exception applied. And because the seizure was reasonable, had defense counsel objected, the objection ultimately would have been overruled, thereby not having a reasonable probability of affecting the outcome of the trial. The court therefore denied defendant's request for a new trial.

## II. ANALYSIS

The issue before this Court is whether the trial court erred by determining that defendant is not entitled to a new trial on the basis of ineffective assistance of counsel.[2]

Defendants have the guaranteed right to the effective assistance of counsel. *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Aceval*, 282 Mich App 379, 386; 764 NW2d 285 (2009). To establish a claim of ineffective assistance, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012).

"The Fourth Amendment of the United States Constitution and its counterpart in the Michigan Constitution guarantee the right of persons to be secure against unreasonable searches and seizures." *People v Kazmierczak*, 461 Mich 411, 417; 605 NW2d 667 (2000). "Whether a search or seizure is lawful depends on whether it is reasonable. Therefore, a search for purposes of the Fourth Amendment occurs when the government intrudes on an individual's reasonable, or justifiable, expectation of privacy." *People v Mahdi*, 317 Mich App 446, 457-458; 894 NW2d 732 (2016) (quotation marks and citations omitted). "A warrantless search and seizure is per se unreasonable unless shown to fall within one of the various exceptions to the warrant requirement." *People v Roberts*, 292 Mich App 492, 503; 808 NW2d 290 (2011) (quotation marks and citation omitted). It is the government that bears the burden of showing that a search was justified by a recognized exception. *People v Chowdhury*, 285 Mich App 509, 521; 775 NW2d 845 (2009).

Under the exigent-circumstances exception to the Fourth Amendment's warrant requirement, police may seize property they have probable cause to believe contains contraband or evidence of a crime so long as they can "articulate specific and objective facts" that "reveal a necessity for immediate action" to prevent the immediate loss or destruction of the evidence. *People v Blasius*, 435 Mich 573, 593-594; 459 NW2d 906 (1990). "The rationale underlying the exigent circumstances exception is that when the police have the probable cause necessary to secure a warrant, but circumstances make it impossible for them to obtain the warrant in time, then

---

[2] Claims of ineffective assistance of counsel involve a mixed question of law and fact. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). This Court reviews a trial court's factual findings for clear error, and any constitutional determinations are reviewed de novo. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). A finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake was made. *People v Mendez*, 225 Mich App 381, 382; 571 NW2d 528 (1997). To the extent this issue also requires a review of whether defendant's Fourth Amendment rights were violated, that issue is reviewed de novo. *People v Mahdi*, 317 Mich App 446, 457; 894 NW2d 732 (2016).

it is 'reasonable' under the Fourth Amendment to conduct a search." *People v Clement*, 107 Mich App 283, 292; 309 NW2d 236 (1981) (quotation marks and citation omitted). "The existence of exigent circumstances must be considered on a case-by-case basis." *Chowdhury*, 285 Mich App at 526.

The first inquiry is whether there was a sufficient opportunity to obtain a warrant. See *Mincey v Arizona*, 437 US 385, 394; 98 S Ct 2408; 57 L Ed 2d 290 (1978) (finding "no exigent circumstances" supporting a warrantless search because "[t]here was no indication that evidence would be lost, destroyed, or removed during the time required to obtain a search warrant."). Although a search warrant requires probable cause, the warrant also "must particularly describe the place to be searched and the persons or things to be seized." *People v Hellstrom*, 264 Mich App 187, 192; 690 NW2d 293 (2004), citing US Const, Am IV, and Const 1963, art 1, § 11. But the police had no idea who possessed the phone and had no idea where the phone was even located because it had been turned off and did not start revealing its location until the morning of February 4. Without being able to provide a particular location to search for the 4616 phone, it was impossible for the police to secure a valid search warrant for it. The first opportunity to obtain a search warrant for the seizure of the 4616 phone would have been after its whereabouts was discovered on the morning of February 4 when the phone began pinging again. Officers were promptly dispatched to conduct surveillance at the ping location, and the Explorer left that location at 10:20 a.m. Even then, the police did not know who possessed the phone until after the Explorer was stopped and defendant was ascertained as the driver. Under these circumstances, we are satisfied that the officers did not have a sufficient opportunity to obtain a warrant.

As noted, the exigent circumstances exception requires probable cause. *Blasius*, 435 Mich at 593. "Probable cause exists when the facts and circumstances known to the police officers at the time of the search would lead a reasonably prudent person to believe that a crime has been committed and that evidence will be found in a particular place." *People v Beuschlein*, 245 Mich App 744, 750; 630 NW2d 921 (2001). The police had probable cause to believe that the 4616 phone, which was located inside the Explore, contained evidence related to the murder of Johnson. Griffin had communicated both before the murder and after the murder with the 4616 phone that was traced to that vehicle. Plus, the 4616 phone was located near the crime scene the evening before the shooting, and it was located about 12 minutes away from the crime scene about 12 minutes after the shooting. That information, coupled with the fact that Griffin's phone appeared to have been reset around noon on the day of the shooting, strongly suggests that whoever Griffin was communicating with was involved with the murder.

Defendant argues that there was not probable cause to seize the other phones in the vehicle. We disagree. Once the police determined that the 4616 phone was inside the moving Explorer, they had probable cause to seize any other communication devices inside that vehicle because it is reasonable to believe that because the possessor of the 4616 phone was involved with the murder, then his other communication devices could contain evidence as well. Accordingly, the police had probable cause justifying the seizure of the other phones.

Next, the trial court determined that there were specific and objective facts that supported the officers' conclusion that immediate action was necessary to prevent the loss or destruction of the 4616 phone. The officers were primarily concerned that they had no other viable way to seize the phone and that a failure to seize it, once discovered on February 4, could lead to the total failure

in recovering the phone and any pertinent data on it. The facts the police relied on in claiming there were exigent circumstances included: (1) the phone had been silent for days, as if it had been turned off; (2) the phone only recently on February 4 reconnected to the network; (3) the phone was scheduled to be shut off by the service provider in a couple of days; (4) the possessor of the 4616 phone was unknown; and (5) although they knew the phone was located in the Explorer, trailing a moving vehicle is difficult and can result in a dangerous high-speed chase. We agree with the trial court that the concerns of the police were valid. There was a high degree of urgency because the phone was essential to the police's investigation of the murder, had not been giving a pinging location and was scheduled to be permanently deactivated. The ping could be lost at any time if the phone was turned off or the battery died. And while officers were trailing the vehicle, this was no sure bet either. Roy testified that trailing a vehicle without being detected is difficult. If the officers followed the Explorer too closely, it could have alerted defendant and led to either a deletion of the phone's data or a high-speed chase. These specific and objective facts support the conclusion that there were exigent circumstances to seize the phone without a warrant.

We disagree with defendant that the police created these exigent circumstances. See *People v Trapp*, 335 Mich App 141, 159; 966 NW2d 420 (2020) ("Police officials . . . are not free to create exigent circumstances to justify their warrantless intrusions . . . .") (quotation marks and citation omitted). No GPS ping data was received for the 4616 phone for about a week after the initial warrant was obtained, and the phone was scheduled to be shut off by the service provider. When Roy discovered that the phone was actively pinging on the morning of February 4, 2017, officers were quickly dispatched to the ping location for surveillance. Once the Explorer left that location and was confirmed to be carrying the 4616 phone, the officers reasonably decided to stop the vehicle at the car wash to avoid the risk that the pinging would cease and also the possibility that they would lose sight of the Explorer in traffic. These were the exigent circumstances that justified the initial seizure of the vehicle, and they were not created by the officers. Once the vehicle was stopped, it was reasonable for the officers to seize the cell phones to prevent the destruction of evidence while seeking a warrant. See *Riley v California*, 573 US 373, 388; 134 S Ct 2473; 189 L Ed 2d 430 (2014) ("Both [of the defendants] concede that officers could have seized and secured their cell phones to prevent destruction of evidence while seeking a warrant. That is a sensible concession."), citing *Illinois v McArthur*, 531 US 326, 331-333; 121 S Ct 946; 148 L Ed 2d 838 (2001).

In conclusion, the facts the police relied on objectively showed that there was an actual current danger of the officers losing the 4616 phone and the data therein. Based on the circumstances, the officer had probable cause to believe that all three phones contained evidence

of the murder. Once the stop of vehicle was initiated, the officers acted reasonably by seizing the phones to prevent the destruction of evidence. Accordingly, we agree with the trial court's determination that the exigent-circumstances exception was applicable and that because it was

applicable,[3] defendant cannot show how the outcome of his trial could have been different had defense counsel objected to the seizure of the phones.

       Affirmed.

/s/ Douglas B. Shapiro
/s/ Colleen A. O'Brien
/s/ James Robert Redford

---

[3] Given our conclusion, we need not address the applicability of the automobile exception.